**In the Matter of Neal J. HASCHKE and Mary C. Haschke, Debtors.**

**Bankruptcy No. BK87–541.**

United States Bankruptcy Court, D. Nebraska.

June 26, 1987.

Daniel A. Fullner, Madison, Neb., for debtors.

Terrence L. Michael, Omaha, Neb., for the Bank and PCA.

Richard Lydick, Omaha, Neb., for trustee.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter came on for hearing on May 11, 1987, upon the Motion to Dismiss filed by the Federal Land Bank of Omaha (the "Bank") and the Production Credit Association of the Midlands ("PCA"). Appearing on behalf of the Bank and PCA was Terrence Michael of Omaha, Nebraska. Appearing on behalf of the Debtors was Daniel Fullner of Madison, Nebraska. Appearing on behalf of the Trustee was Richard Lydick of Omaha, Nebraska.

### Findings of Fact

The debtors, Neal J. Haschke and Mary C. Haschke, filed for relief under 11 U.S.C. Chapter 12 on February 26, 1987. Evidence adduced at trial indicates that the

debtors' income for 1986 was broken down as follows:

| | |
|---|---|
| deficiency payment - | $4,205.00 |
| sale of straw - | $4,905.00 |
| co-op dividend - | $ 376.00 |
| lease (cash rent) - | $9,000.00 |
| sale of farm equip. - | $45,522.00 |
| off-farm income (wages) - | $25,572.00 |

In 1986, debtors sold all of their farm equipment. They also entered into a 3-year lease on January 10, 1986, under the terms of which they are leasing all of their 244-acre farmstead, except for their personal residence, for $9,000.00 cash rent per year. They are currently in the second year of the aforementioned lease. Testimony indicated that Mr. Haschke obtained employment as a truck driver in January of 1986, for which employment he received wages in the approximate amount of $20,053.00 in 1986. Mrs. Haschke obtained employment as a nurse in November of 1985 and for 1986 received wages of approximately $5,117.00. The debtors still engage in the marketing and storage of crops which they own.

The Bank and the PCA have moved to dismiss on the grounds that the debtors are not "family farmers" as defined by § 101(17) of the Code, specifically alleging that the debtors did not receive more than 50% of their gross income from a farming operation in the taxable year preceding the taxable year in which they filed their case. The Bank and the PCA have also alleged that the debtors are not engaged in a "farming operation" as defined by § 101(20) of the Code.

### Issues

1) Did the debtors receive more than 50% of their 1986 gross income from a farming operation?

2) Were the debtors engaged in a farming operation at the time of the filing of their petition?

### Decision

Although the debtors did receive more than 50% of their 1986 gross income from a farming operation, they are not "family farmers" for the purposes of 11 U.S.C. Chapter 12 because they were not engaged in a farming operation when they filed for relief. The motion to dismiss is sustained and the case is hereby dismissed.

### Discussion of Law

11 U.S.C. § 101(17) provides as follows:

"(17) 'family farmer' means—

(A) Individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000.00 and not less than 80% of whose aggregate non-contingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of the farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50% of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed."

11 U.S.C. § 101(20) provides as follows:

"(20) 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."

The debtors have included in their farm income the $9,000.00 cash rent they received for leasing their land. The 7th Circuit, in dealing with a similar determination as to whether proceeds from the leasing of agricultural property constituted farm income, found that they did not, stating as follows:

"The Bankruptcy Court found Armstrong received the rent money from Hanlon in cash and up front. This is not a risk-laden venture in the nature of farming. It cannot be considered part of Armstrong's personal farming operation ... There was no risk involved. Armstrong was insulated from the traditional risks of

farming." *Matter of Armstrong*, 812 F.2d 1024, 1027, 1028 (7th Cir., 1987). *Accord Matter of Mary Freese Farms, Inc.*, 73 B.R. 508 (Bankr.N.D.Iowa 1987).

As in *Armstrong*, the debtors in the instant case receive cash rent for their land. They are not farming the land but rather landlords in a landlord-tenant relationship. They will receive their rent regardless of what the tenant does with the land. There is no crop-share arrangement and no evidence of the debtors' involvement in the farming of the property. Therefore, the $9,000.00 which the debtors receive as cash rent for their farmstead is not farm income for the purposes of § 101(17).

The Bank and PCA allege that deducting the $9,000.00 cash rent is sufficient to put the debtors below the 50% requirement of § 101(17). They further allege that, even if the $9,000.00 were considered farm income, the debtors would still fall below the 50% requirement. However, the Bank and PCA have apparently not considered that the $45,522.00 received in 1986 for the sale of farm machinery is also farm income. The 7th Circuit in *Armstrong* also found that proceeds from the sale of farm machinery were farm income. The fact that the debtors in the instant case have apparently sold all of their farm machinery does not alter this Court's belief that the proceeds from the sale of the machinery were farm income. The debtors were not farm implement dealers—they bought farm equipment to enable them to farm. The farm equipment was an essential part of the farm operation. Therefore, the $45,-522.00 realized from the equipment sale was farm income.

After deducting the $9,000.00 cash rent from the farm income and adding in the $45,522.00 from the sale of equipment, it is obvious that the debtors did receive more than 50% of their gross income ($55,008.00 out of a total of $89,580.00) from a farming operation in 1986, thus complying with that particular requirement of § 101(17).

This Court reaches a different result, however, with regard to the issue of whether the debtors were engaged in a farming operation when they filed for relief. The debtors have leased out all of their farmstead except their personal residence. They are not involved in farming the leased premises. They have sold all of their farm equipment, so they have nothing left with which to farm. They indicate that they are involved with marketing and storing crops that they still own. § 101(20) lists several operations that qualify as "farming operation(s)." The list is not intended to be all-inclusive. 2 *Collier on Bankruptcy*, 15 Ed., Para. 101.20, p. 101–48. However, the statute does specifically list "production or raising of crops." This Court does not believe that mere marketing and storing of crops constitutes "production or raising of crops" pursuant to § 101(20). Thus, the debtors were not "engaged in a farming operation" when they filed their petition and are therefore not eligible for relief under Chapter 12.