**In re Tracy Lynn HETTINGER and Debbie Darlene Hettinger, Debtors.**

**Bankruptcy No. 88–20195–DPM.**

**Motion Nos. B and C.**

United States Bankruptcy Court,
E.D. Missouri, N.D.

Jan. 11, 1989.

Larry S. Phillips, Edina, Mo., for debtors.

Fredrich J. Cruse, Hannibal, Mo., Trustee.

J. William Holliday, Kahoka, Mo., for William E. Alberty.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

Fredrich J. Cruse, Trustee, and William E. Alberty, creditor, each filed a Motion To Dismiss the Debtors' Chapter 12 bankruptcy petition. The Movants assert that the Debtors are not "family farmers" as defined under 11 U.S.C. § 101(17). A hearing was held on September 20, 1988 and all post-trial briefs were filed by October 3, 1988.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

### FINDINGS OF FACT

The facts in this case are generally not in dispute. Tracy Hettinger lived most of his life on the farm in question which was owned by his father, Eldon K. Hettinger.

From childhood he actively assisted his father with the family farming operation. Prior to his father's death on December 5, 1985, Tracy had farmed the land while his father was in ill health. Upon Eldon's death, Tracy and his sister, Connie J. Delaney, each inherited an undivided one-half interest in the farm. Connie conveyed her interest to Tracy for $1.00. In 1985, Tracy Hettinger farmed the land himself. In 1986, he rented the farm to a neighbor, Jerry Schultz. The Debtors claim they intended to farm the land themselves in 1987, but failed to give timely written notice to vacate pursuant to Mo.Ann.Stat. § 441.050 (Vernon 1986); and thus, Jerry Schultz was able to retain the premises. The Debtors did plant a crop in 1988 on their land.

The Debtors' 1987 income consisted of:

| | |
|---|---|
| Farm rent received from Schultz | $6,800.00 |
| Byron Fowler paid Tracy hourly wages to perform farm labor on Fowler's farm | $7,491.73 |
| Connie J. Delaney was employed in non-farming work for LaBelle Manor Care | $ 614.72 |

Tracy testified that the farm rent proceeds and a portion of his hourly labor income were paid to creditors Production Credit Association and Federal Land Bank. It is the position of the Trustee and creditor, William E. Alberty, that neither the 1987 farm rent nor the labor income is farm income and, therefore, the Debtors fail to meet the definition of "family farmer".

Hettinger conceded that he received cash rent from Schultz in 1987. The Debtors did not contribute any funds to grow and harvest the crops, nor were they to share in the profits or loss. It was a no-risk rental agreement. In the same year, Tracy Hettinger performed various farm labor work on Byron Fowler's farm. Fowler paid Tracy an hourly wage which varied depending on the nature of the work and the hours required.

CONCLUSION OF LAW

Section 101(17)(A) of the Bankruptcy Code defines "family farmer" as an:

"(A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate non-contingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or *such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income* for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed;" (Emphasis Added)

Section 101(20) of the Bankruptcy Code defines "farming operation" as:

"(20) 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock and production of poultry or livestock products in an unmanufactured state;"

The Movants rely on *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987) for the proposition that a cash rent agreement is not a risk-laden venture in the nature of farming. Therefore, the Court held such a venture cannot be considered part of Armstrong's personal farming operations. The *Armstrong* Court concluded that such an arrangement is simply a landlord-tenant relationship. Although this mechanical method of analysis is simple, predictable and appealing, it fails to take into consideration the intent of Congress in the area of farming legislation and the nature of the farming industry today. The *Armstrong* dissent addressed these problems by first agreeing with the majority opinion in holding that the sale of farm machinery can, depending on the circumstances, meet the definition of "farming operation". The majority held:

"Implicit in this definition [of farming operation] is the inclusion of general activities inherent in farming and, we believe, the means (or in this case the

equipment) necessary to perpetuate the farming operation the definition speaks of. When a farmer sells some of his machinery in an effort to scale down his operation (say from 200–100 acres) and save the farm, the money received is inescapable from the 50% of the farming operation dissolved.

We believe this to be a pragmatic viewpoint. A contrary result would reap illogical results which we are confident Congress had no desire to create. Farmers in financial trouble could harvest their crop on a given year, decide to scale down their operation, sell machinery and be considered non-farmers under § 101(17) even though they had no significant outside employment."[1]

The *Armstrong* dissent agreed with the majority reasoning that since the sale of equipment was integral to his farming operation, then the sale proceeds were deemed "farm income". The dissent concluded:

"It seems to me entirely possible that the land rentals are for the same reason equally 'farm income'....

If Armstrong was forced temporarily to rent this land for the same reason he was forced to sell his machinery—presumably to salvage what he could of his financially troubled farm—then the lease proceeds may be seen as income inherently tied to the uncertainties of farming and thus derived from a farming operation. Similarly, if Armstrong can show a firm purpose to farm this acreage again in the near future, the rental income could qualify as an integral part of his farming operation. On the other hand, if the facts suggest that Armstrong has disposed of the land, cut his losses and abandoned the land as part of his own farming operation, then Armstrong looks like an owner only of land, not of a farming operation. In any event, the consequences of Armstrong's financial distress in farming should not lead mechanically to the conclusion that he is no longer a 'farmer'."

Having considered the entire *Armstrong* opinion, I reject the majority application of a mechanical test to determine what conduct constitutes a farming operation. Each case must be judged on the totality of the circumstances. *See In re Paul*, 83 B.R. 709 (Bankr.D.N.D.1988); *In re Easton*, 79 B.R. 836 (Bankr.N.D.Iowa 1987); and *In re Rott*, 73 B.R. 366 (Bankr. N.D.1987). To conclude automatically that all cash rent agreements produce non-farm income not only ignores the intent of Congress, but also the accepted business practices of the farming community. It is clear that the one common thread in all farming legislation is the desire to save the family farmer. The definitions of "family farmer" and "farming operation" are to prevent those individuals who are obviously nonfarmers from receiving the benefits of farming legislation. The investor who owns farm land but has limited farm background, minimal participation in farming, and fails to show any future intent to farm should not receive the benefits from farming legislation. In contrast, Tracy Hettinger should receive those benefits if he can demonstrate that he has an active farming history; and his conduct reveals an intent to salvage his farm for future use. Obviously, when a farm debtor sells off his equipment and livestock, elects not to plant a crop, and rents his land on a cash basis, there is a strong presumption that the individual is liquidating and is no longer a farmer pursuant to 11 U.S.C. § 101(17) and (20). However, if the debtor can provide clear and convincing evidence that his conduct is based on sound business judgment that in order to save the farming business, it is necessary in the present and immediate future to take such drastic steps, then he has met his burden of proving that he, in fact, is a "family farmer" conducting a "farming operation".

In the instant case, Tracy Hettinger has met his burden. He was raised on this farm and assisted his father in the farming business. When his father died, he continued to farm the land until 1986 when he rented the land on a cash basis to Jerry

---

1. § 101(17) is currently § 101(20).

Schultz. Tracy testified that he intended to farm the land himself in 1987 but had failed to give the required notice to Schultz and, therefore, Schultz continued to farm the land in 1987. In 1988, Tracy regained the land and planted a crop. Under these circumstances, the $6,800.00 cash rent should be considered as farm income even though there was no risk to the Hettingers.

The Movants further argue the $7,491.73 in wages Tracy received from Byron Fowler cannot be considered farm income, because it consisted of hourly wages earned on someone else's farms where there was no risk to the Debtor. He was to be paid regardless of the success or failure of the crop. The deciding factor is not whether he was performing traditional farm labor; nor the fact he worked on someone else's farm. That is not important. If he had chosen to drive to town and accept hourly wages, the result would be the same. The question is how does the Debtor intend to utilize these wages. If the evidence indicates the Debtor has liquidated his farm holdings and does not intend to use his hourly wages for an ongoing farming operation, then he is not a family farmer.

In the case of *In re LaFond*, 791 F.2d 623 (8th Cir.1986), the debtors moved for lien avoidance in regard to the bank's non-possessory, nonpurchase money interest in certain large items of farm equipment. The bank argued that LaFond's farm equipment could not be considered implements or tools of the trade because they were not engaged in the trade of farming under section 522(f). To be so engaged, the debtors must meet the definition of farmer set forth in 11 U.S.C. § 101(17).[2] If the definition were applied, then the La-Fonds could not be considered farmers because their primary family income came from Mr. LaFond's part-time job as a policeman. The Eighth Circuit agreed with the view of the bankruptcy court when it held that:

[a] more realistic definition should take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. *See Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984); *In re Yoder*, 32 B.R. 777 (Bankr.W.D.Pa.1983).

The Court found no clear error in the lower court's factual conclusions that the La-Fonds were farmers. As a result of hard economic times, the LaFonds lost their Aitken County Farm, but they

"... invested $20,000 in their then current farming operations, and continue their bona fide effort to earn a living at farming. We agree with the bankruptcy court's statement that

'[t]his conclusion is not barred by the fact that Debtor Jerome LaFond derives income from his outside employment. Given the economics of small-farm agriculture under the harsh climatic conditions of Northeastern Minnesota, it is nearly impossible for most farmers to subsist without outside employment.'

*In re LaFond*, 45 B.R. [195] at 200. [ (Bankr.Minn.1984) ]. *See also In re Yoder*, 32 B.R. 777, 780 (Bankr.W.D.Pa. 1983), aff'd in part, rev'd in part on other grounds, 48 B.R. 744 (W.D.Pa.1984)."

As previously noted, the proceeds from the cash rent and a portion of the farm labor wage were used to make payments to creditors Production Credit Association and the Federal Land Bank on the 250 acre farm. Obviously, the Hettingers are trying to save their farm by these payments with the cash rent and farm labor wages and they continued with their farming operation by planting in 1988.

After a review of the record, argument of counsel and briefs, I find that under the

---

**2.** 11 U.S.C. § 101(17) farmer "means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person." § 101(17) has been amended by § 101(19).

facts and totality of the circumstances of this case, that both the cash rent and farm labor wages are an integral part of their farming operations and, therefore, those proceeds are deemed "farm income" and Tracy Lynn Hettinger and Debbie Darlene Hettinger are "family farmers" as defined by 11 U.S.C. § 101(17). Accordingly, the Motions to Dismiss are DENIED.