**In re David VERNON, Charlotte Vernon, Debtors.**

**Bankruptcy No. 88–10609–BSS.**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

May 3, 1989.

Tom K. O'Loughlin, II, Cape Girardeau, Mo., for movant Farm Credit Bank of St. Louis.

Jeffrey S. Gavin, Poplar Bluff, Mo., for debtors.

William H. Frye, Cape Girardeau, Mo., Trustee.

MEMORANDUM OPINION
AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

INTRODUCTION

On November 29, 1988, David and Charlotte Vernon (hereinafter the "Debtors") filed joint voluntary petitions for relief under Chapter 12 of Title 11 of the United States Code. The filing had the effect of staying a foreclosure on farm land owned by the Debtors scheduled to occur on November 30, 1988 by Farm Credit Bank of St. Louis, the holder of a deed of trust on the property. On December 7, 1988, Farm Credit Bank of St. Louis (hereinafter the "Movant") filed a Motion To Dismiss the Debtors' bankruptcy. The Motion alleged that Mr. Vernon is not a family farmer within the meaning of 11 U.S.C. §§ 101(17) and (18) and does not have a "farming operation" as defined by 11 U.S.C. § 101(20). The Debtors deny these allegations, claiming they are entitled to appropriate relief under Chapter 12. A hearing on the matter was held wherein oral argument and testimony was presented.

FACTS

The Movant, Farm Credit Bank of St. Louis, holds a deed of trust on certain farm land owned by the Debtors in Butler County, Missouri (hereinafter the "Farm Land"). Mr. Vernon has earned his livelihood as a farmer since 1973. Recently, however, he experienced financial difficulties.

In 1985, Mr. Vernon lost money on the sale of his crop due, in part, to a decline in the commodities market. As a consequence, Mr. Vernon was unable to acquire an operating loan to assist him in planting his 1986 crop. Furthermore, in 1987, Mr. Vernon lost an entire grain bin of rice due to the failure of a grain bin fan. Mr. Vernon thus began to scale down his farming operation in an effort to maintain his family.

In 1987, Mr. Vernon sold a majority of his cattle, approximately 150 heads. Additionally, Mr. Vernon sold much of his farming equipment. Moreover, because he doubted he could acquire another crop loan, Mr. Vernon leased his Farm Land to Bill Gillean, his brother-in-law. The terms of the lease provided that Mr. Gillean would farm the land from May 1, 1987 to December 31, 1989 for an annual fee of $27,200.00 (hereinafter the "Rent Proceeds") to be paid on the first of May each year beginning May 1, 1987. The lease contained neither a crop-share provision nor a crop expense share provision. Rather, the lease was a straight cash rent lease, without risk to the Debtors. Mr. Vernon and Mr. Gillean testified without contradiction that it was the understanding of both parties that Mr. Vernon could rescind the lease at will, thereby regaining possession of the Farm Land.

The proceeds from the sale of the equipment and cattle, and the Rental Proceeds were applied toward the reduction of various farm debts. Additionally, in 1987, Mrs. Vernon earned money by selling real estate and Mr. Vernon by working at a commercial trucking enterprise. By the summer of 1988, however, Mr. Vernon began expressing an interest in regaining possession of his Farm Land. In October, 1988, Mr. Vernon planted 40 acres of wheat on the Farm Land with the assistance of Mr. Gillean who helped him plant and fertilize the wheat.[1]

By mid-November, Mr. Vernon regained possession of the Farm Land and planted a wheat crop on it. Mr. Gillean testified that he did not intend to help Mr. Vernon harvest the matured crop because Mr. Vernon still owned a combine for such purposes.

Mr. Vernon testified that he intends to plant 320 acres of soybean in 1989 with the assistance of his mother who has promised him a $25,000.00 to $27,000.00 crop production loan.

The controversy revolves around whether Mr. Vernon qualifies as a "family farmer" under 11 U.S.C. §§ 101(17) and (18) and whether he engages in a farming operation as is required by 11 U.S.C. § 101(20). The Movant claims that Mr. Vernon fails to meet the statutory requirement that 50% of his gross income from the taxable year preceding the taxable year he filed under Chapter 12 be received from farming operations. The Movant claims the Rent Proceeds cannot be applied towards the portion of Mr. Vernon's income that is derived from farming operations. Nor, the Movants claim, can the $27,265.00 that Mr. Vernon claimed as farm income on his 1987 Federal Tax Return be counted as being derived from farming operations. Mr. Vernon declared as income a 1986 commodity credit loan in the amount of $27,265.00 in 1987 when he defaulted on the loan and the debt was "forgiven" (hereinafter the "Loan Proceeds").

Thus the issue before this Court is whether the Rent Proceeds and the Loan Proceeds constitute income from farming operations. If so, Mr. Vernon qualifies as a family farmer and is eligible for relief under Chapter 12 of the United States Bankruptcy Code. This Court finds that Mr. Vernon is a family farmer pursuant to 11 U.S.C. §§ 101(17) and (20).[2]

---

1. Mr. Gillean, Mr. Vernon and Mr. Steve Vernon, (the Debtor's brother) testified that it was common practice for Mr. Vernon's family to help one another by sharing labor, equipment, seed, chemicals and fertilizer. Mr. Vernon also testified that he intended to repay Mr. Gillean for the seed and fertilizer used to harvest the wheat.

2. The Court notes that although the Movant claims Mr. Vernon failed to meet the 11 U.S.C. § 101(18) standard as a "family farmer with regular annual income" no evidence was presented at the hearing to support such a claim other than Mr. Vernon's sale of his farm equipment and his temporary absence from active farming. The Court resolves this issue with a

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## DISCUSSION

The legislative history of Chapter 12 indicates that the Chapter was created "in response to the tremendous hardships that has afflicted many segments of the farm community with the large resulting number of bankruptcies." *In re Welch*, 74 B.R. 401, 405 (Bkrtcy. S.D. Ohio 1987) (*citing*, 132 Cong.Rec. S15091). Chapter 12 was therefore designed to help family farmers keep their farms and satisfy creditors out of future earnings. *Welch* at 405. The provisions ensure that only family farmers—not tax shelters or large corporate entities—will benefit. *Welch* at 405 (*citing*, 132 Cong.Rec. S15076). Consequently, Congress has identified precisely whom Chapter 12 was intended to help. Section 101(17) of the Bankruptcy Code defines a family farmer as an

individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts ... on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individuals or such individual and spouse's gross income of the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

A "farming operation" is defined in section 101(20) of the Bankruptcy Code as including "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."

The Movant claims that Mr. Vernon does not qualify as a family farmer because the Rent Proceeds and the Loan Proceeds may not be included as income arising out of a farming operation. The Debtors' 1987 Federal Income Tax Return (Form 1040) lists their gross income as follows:

|  | Real Estate | Trucking | Farming |
|---|---|---|---|
| Charlotte Vernon | $11,018.00 | | |
| David Vernon | 8,214.00 | $82,733.00 | $116,401.00 |

If $54,465.00 (the sum of the Rent Proceeds and Loan Proceeds) were subtracted from the Debtors' total gross income as non-farming income, then Mr. Vernon would not meet the 50 percent test of § 101(17) and would not qualify as a family farmer. In considering the Movant's claims, this Court will address the Rent Proceeds and the Loan Proceeds separately.

### *The Rent Proceeds Constitute Income Derived From A Farming Operation*

The determination of eligibility for relief under Chapter 12 of the Code should be decided on a case by case basis. *In re*

*Butler*, 74 B.R. 106 (Bkrtcy. W.D. Mo. 1985). The burden of proof for establishing eligibility for bankruptcy relief is on the party filing the petition. *In re Rott*, 73 B.R. 366, 371 (Bkrtcy. D.N.D.1987). In the instant case, Mr. Vernon bears the responsibility of proving that the Rent Proceeds constitute income derived from farming operations as is required by 11 U.S.C. § 101(20). Mr. Vernon has satisfied that burden.

The Movant argues that the Rent Proceeds should not be considered income derived from a farming operation because the rents were earned "up front". Cash rent,

discussion of Mr. Vernon's intent at p. 91 of this Opinion.

received up front for the rent of real property is not subject to any of the inherent risks associated with farming and is considered non-farm income. *In re Armstrong*, 812 F.2d 1024, 1027 (7th Cir.1987). In *In re Armstrong*, the Seventh Circuit held that income not connected to the inherent dangers and risks of farming is not farming income. Consequently, according to the *Armstrong* Court, rent which is paid annually and which is not contingent upon the success of a harvest is not considered farm income.

While *Armstrong* is admittedly the leading case in this area of law there is a growing minority which follows the dissent in *Armstrong*. The dissent in *Armstrong* felt that if the court allows proceeds from the sale of farming equipment to be considered farm income, then so should rent proceeds, since both were acquired in an effort to salvage a farm:

> If Mr. Armstrong were forced temporarily to rent this land for the same reason he was forced to sell his machinery—presumably to salvage what he could of his financially troubled farm—then the lease proceeds may be seen as income inherently tied to the uncertainties of farming and thus derived from a farming operation.

*Armstrong* at 1031. The dissent conceded that had Mr. Armstrong disposed of the land with the intent of abandoning it, then the proceeds should not be considered farm income. In either case, however, a mechanical test should not be applied.

The *Armstrong* dissent and the burgeoning minority then, prefer to consider the "totality of the circumstances" in ascertaining what is farm income. See *In re Fogle*, 87 B.R. 493, 494 (Bkrtcy. N.D. Ohio 1988), *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bkrtcy. D. Or.1987), *In re Burke*, 81 B.R. 971, 976 (Bkrtcy. S.D. Iowa 1987), *In re Rott*, 73 B.R. 366 (Bkrtcy. D.N.D.1987). Indeed, the court in *In re Rott* stated:

> After extensive deliberation, this court is unable to formulate a mechanical test for parties to use in determining gross farm income, for purposes of determining eligibility for Chapter 12. The court

does not believe that farmers forced to partially liquidate assets or temporarily rent out machinery or farmland, in an effort to salvage their farm operation, should be foreclosed from seeking relief under Chapter 12, if such actions cause the 50% farm income test not to be met. Clearly, Congress did not intend that farmers who make sound business decisions pre-bankruptcy in an effort to remedy their financial woes should be excluded from Chapter 12 relief when their immediate intention is to reorganize by actually farming. While an empirical formula for determining Chapter 12 eligibility would be convenient and desirable, this court's beliefs are in line with the dissenting opinion in the Seventh Circuit *Armstrong* case, that "it is appropriate for courts to try to draw realistic distinctions ... on a case-by-case basis, focusing on whether the income in question is essentially derived from a farming operation that is owned or operated by the recipient of the income and that reflects the traditional farming risks of cyclical and unpredictable income". *In re Armstrong*, 812 F.2d at 1031.

*Rott* at 373. To conclude automatically that all cash rent agreements produce non-farm income not only ignores the intent of Congress, but also the accepted business practices of the farming community. It is clear that the one common thread in all farming legislation is the desire to save the family farmer. *In re Hettinger*, 95 B.R. 110 (Bkrtcy. E.D. Mo.1989).

Consequently, courts have developed several criteria to consider whether cash rent is farm income. The court in *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bkrtcy. D. Or.1987) considered:

1. Whether there is a physical presence of family members on the farm,
2. Whether the debtor owns traditional "farm assets",
3. Whether leasing land is a form of scaling down of previous farm operations,
4. What the form of the lease arrangement is, and
5. Whether the debtor had, as of the date of filing, permanently ceased all of its

own investment of assets and labor to produce crops or livestock.

The court in *In re Burke* 81 B.R. 971 (Bkrtcy S.D. Iowa 1987) considered similar criteria. With respect to cash rent the *Burke* court stated:

"consideration will be given to the reason for the cessation (inability to obtain operating credit versus new non-farm venture); the extent of the cessation (leasing a portion of the farm in an affect to scale back the operation versus leasing the entire farm); and the relationship to the tenant (leasing to family members as opposed to leasing to non-related individuals or entities)." *Burke* at 977.

■ Application of these criteria to the facts in the case at bar lead this Court to adopt the minority position stated in *Armstrong* and to conclude that the Rent Proceeds are farm income. First, Mr. Vernon leased the Farm Land to his brother-in-law with the express understanding that the lease could be terminated at will. The lease was a three year lease which was terminated after only six months so that Mr. Vernon could resume farming. In spite of the fact that Mr. Vernon sold much of his farming equipment, he retained ownership of a combine necessary for harvesting the crop he has planted. Furthermore, Mr. Vernon has expressed an intention to plant a crop next year and has already made arrangements to acquire a crop loan in furtherance of that effort. Finally, Mr. Vernon has been a farmer since 1973. His family has frequently helped him and the assistance offered by his brother-in-law seems to this Court to be motivated by a desire to help Mr. Vernon maintain his farm—not lose it. According to Mr. Vernon's brother, "farming is in his (David Vernon's) blood."

Consequently, this Court concludes that the Rent Proceeds are farm income, derived from a farming operation.

*The Loan Proceeds Constitute Income Derived From A Farming Operation*

■ On his 1987 Federal Income Tax Return, Mr. Vernon listed $27,265.00 as income. This money was received by Mr. Vernon in 1986 in the form of a commodities loan. In 1987 Mr. Vernon defaulted on the loan. At the hearing he testified that the debt was forgiven and he subsequently declared the money as income on his 1987 Federal Tax Return.[3]

Gross income is not defined in the Bankruptcy Code. Consequently, courts have looked to the Internal Revenue Code to ascertain what Congress intended that phrase to encompass. *In re Faber*, 78 B.R. 934 (Bkrtcy. S.D. Iowa 1987). Gross income for purposes of the Bankruptcy Code has the same meaning as gross income under the Internal Revenue Code. *In re Rott*, 73 B.R. 366, 371 (Bkrtcy. D.N.D.1987) In *Matter of Jessen*, 82 B.R. 490 (Bkrtcy. S.D. Iowa 1988), for example, the court treated certain subsidy payments under the Bankruptcy Code in the same manner such payments are treated under the Internal Revenue Code. The creditors in *Jessen* argued that the money was really a loan, however, the Tax Regulations stated that such funds are income (see 26 (C.R. § 1.61–4). Consequently, the *Jessen* court found the money to be farm income under the Bankruptcy Code.

Similarly, in the instant case, section 61(a)(12) of the Internal Revenue Code states that debt forgiveness is to be declared income in the year the default occurs. Since the Loan Proceeds were 'forgiven' in 1987, and since the loan was given to assist Mr. Vernon in his farming operation, this Court finds the Loan Proceeds to be farm income arising from a farming operation.

### CONCLUSION AND ORDER

This Court finds the Rent Proceeds and the Loan Proceeds to be farm income arising from a farming operation. Conse-

---

**3.** Following the hearing Mr. Vernon submitted a letter to the Court stating that nine months after he received the money Mr. Vernon forfeited his rights to the grain securing the loan, thereby treating the loan as a sale. This letter, however, lacked foundation and was unsupported by the testimony. The Court, then, will rely solely on Mr. Vernon's credible testimony.

quently, both sums may be applied towards the portion of Mr. Vernon's income which is derived from a farming operation. Since more than 50 percent of Mr. Vernon's income in 1987 was derived from a farming operation, Mr. Vernon qualifies as a family farmer and is eligible for relief under Chapter 12.

Accordingly, it is

ORDERED that Mr. Vernon is eligible for relief under Chapter 12 of the United States Bankruptcy Code and the Movant's Motion To Dismiss is DENIED.