In re Joseph W. WATFORD and Doris
F. Watford, Debtors.

Joseph W. WATFORD and Doris F.
Watford, Plaintiffs–Appellants,

v.

FEDERAL LAND BANK OF COLUM-
BIA, Defendant–Appellee.

In re Joseph W. WATFORD and Doris
F. Watford, Debtors.

Joseph W. WATFORD and Doris F.
Watford, Plaintiffs–Appellants,

v.

UNITED STATES of America, Acting
Through the COMMODITY CREDIT
CORPORATION, An Agency of the
United States Department of Agricul-
ture, Defendant–Appellee.

Nos. 88–8894, 89–8029.

United States Court of Appeals,
Eleventh Circuit.

April 25, 1990.

Richard J. Tuneski, Marietta, Ga., for
plaintiffs-appellants.

Lillian H. Lockary, Asst. U.S. Atty.,
Dept. of Justice, Macon, Ga., J. Carol Sher-

**1526**

wood, Jr., Dover, Sherwood & Shelton, Valdosta, Ga., for defendant-appellee.

Before TJOFLAT, Chief Judge, and ANDERSON and CLARK, Circuit Judges.

ANDERSON, Circuit Judge:

In 1985, Joseph W. Watford and Doris F. Watford, appellants, grew soybeans. In 1986, the Watfords ceased the cultivation of their land, stored their soybean harvest on their land, and began conducting a stone crabbing operation in the Gulf of Mexico. Appellants have allowed their land to lie fallow since 1985. However, they have plans to develop fish ponds on the property. At the initial hearings, Mr. Watford testified that these ponds would be for recreational use; but, he testified at the final bankruptcy hearing that he also would harvest the fish by draining ponds.

On July 28, 1987, the Watfords filed a petition for reorganization of their farming operation pursuant to Chapter 12 of Title 11 of the United States Code. Appellants then filed a motion requesting the use of cash collateral to finance their reorganization plan. After an evidentiary hearing, the bankruptcy court concluded that the appellants' offer of adequate protection was insufficient under 11 U.S.C. § 1205 and, therefore, denied appellants' motion. A notice of appeal to the United States District Court was filed on December 21, 1987.

On January 25, 1988, the Federal Land Bank of Columbia (the "Bank"), a creditor, moved to convert or dismiss the appellants' Chapter 12 case, contending that appellants did not qualify for relief under Chapter 12 because they were not "family farmers" under the definition provided in the Bankruptcy Act. The bankruptcy court granted the Bank's motion and dismissed appellants' Chapter 12 petition on March 7, 1988, finding that: 1) the Watfords met the income requirements of 11 U.S.C. § 101(17)(A); 2) the definition of "farming operation," as contemplated by 11 U.S.C. § 101(20) does not include appellants' stone crabbing business; 3) the development of ponds for recreational use could not be considered a "farming operation" under § 101(20); and 4) the storage and maintenance of soybeans awaiting sale does not constitute a "farming operation" under § 101(20).

On March 22, 1988, a hearing was held on appellants' motion for reconsideration of the bankruptcy court's order dismissing appellants' Chapter 12 petition. The appellants offered testimony that they planned to begin commercial production of catfish. While noting that there are cases which recognize the raising of catfish as a valid "farming operation" for Chapter 12 purposes, the bankruptcy court ruled that the appellants' plans for development of the fish ponds were irrelevant because appellants were not engaged in these operations at the time they filed the Chapter 12 petition. The bankruptcy court then denied appellants' motion. Appellants filed a notice of appeal on April 4, 1988.

The district court affirmed the bankruptcy court's dismissal of appellants' Chapter 12 petition. The court held that the bankruptcy court's findings that the appellants' stone crabbing business, storage and maintenance of soybeans, and proposed recreational fishing and camping facility are not "farming operations" under 11 U.S.C. § 101(20) were not clearly erroneous. In addition, the court found that the bankruptcy court's determination that the appellants' catfish farming plans were irrelevant was not clearly erroneous. By separate order, the district court affirmed the bankruptcy court's denial of appellants' motion to use cash collateral because the issue was moot.

Appellants have filed notices of appeal from both district court orders. Those appeals have been consolidated.

■ In order for a bankruptcy court to have jurisdiction over a Chapter 12 petition, the debtor must be a "family farmer." 11 U.S.C. § 109(f) (Supp.1989). "Family farmer" is defined as an

individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts ..., on the date the case is filed, arise out of a farming operation ..., and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

11 U.S.C. § 101(17)(A) (Supp.1989). It is undisputed that the Watfords have met the income and debt requirements of the statute. However, in order to be "family farmers," appellants acknowledge that they must not only meet the 50% and 80% tests, but also they must be "engaged in a farming operation" when they file the Chapter 12 petition. *See In re Paul,* 83 B.R. 709, 712 (Bankr.D.N.D.1988); *In re Haschke,* 77 B.R. 223, 225 (Bankr.D.Neb.1987); *In re Mikkelsen Farms,* 74 B.R. 280, 284 (Bankr. D.Or.1987); *In re Tart,* 73 B.R. 78, 81 (Bankr.E.D.N.C.1987); 2 Collier on Bankruptcy 101–55 (L. King 15th ed. 1989).

■ The issue involved in this case is essentially one of law: do the Watfords' business enterprises constitute a "farming operation" under 11 U.S.C. §§ 101(17)(A) and 101(20)? Whether a particular activity constitutes a "farming operation" under the statute should be evaluated as a legal question. *In re Maike,* 77 B.R. 832 (Bankr. D.Kan.1987). The issue of whether a debtor is engaged in that particular activity is a factual issue. Therefore, we apply a de novo standard to the question of whether the Watfords' activities as found by the bankruptcy court—stone crabbing, soybean storing, or fish pond planning—constitute a "farming operation."

■ 11 U.S.C. § 101(20) (Supp.1989) states:

"farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

However, the above list is not all-inclusive. *In re McNeal,* 848 F.2d 170, 171 (11th Cir.1988); *In re Fogle,* 87 B.R. 493, 494 (Bankr.N.D.Ohio 1988); *In re Paul,* 83 B.R. 709, 712 (Bankr.D.N.D.1988); *In re van Fossan,* 82 B.R. 77, 79 (Bankr.W.Ark. 1987); *In re Martin,* 78 B.R. 593, 595 (Bankr.D.Mont.1987); *In re Haschke,* 77 B.R. 223, 225 (Bankr.D.Neb.1987); *In re Maike,* 77 B.R. 832, 835 (Bankr.D.Kan. 1987) (breeding, raising, and sale of puppies constitutes "farming operation"); *see also In re Armstrong,* 812 F.2d 1024, 1027 (7th Cir.1987) (sale of farming equipment may be part of "farming operation"), *cert. denied,* 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987); *In re Guinnane,* 73 B.R. 129 (Bankr.D.Mont.1987) (hauling of others' cattle was integral part of debtors' "farming operation"). This definition is to be construed liberally in order to further Congress' purpose of helping family farmers to continue farming. *See In re Sugar Pine Ranch,* 100 B.R. 28, 31 (Bankr.D.Or. 1989); *In re Maike,* 77 B.R. at 835; *In re Wolline,* 74 B.R. 208, 209–10 (Bankr.E.D. Wis.1987); *In re Tart,* 73 B.R. 78, 81 (Bankr.E.D.N.C.1987). The determination of whether a debtor's activities constitute a "farming operation" is very fact-specific. *In re Wolline,* 74 B.R. at 209; *In re Middleton,* 45 B.R. 744, 747 (Bankr.D.Minn. 1985).

■ We conclude that appellants' stone crabbing business does not constitute a "farming operation." The stone crabbing is not carried out on the Watfords' property and is too remote from Congress' statutory purpose to constitute a "farming operation."

■ The question of whether the Watfords' storage of soybeans and their fish pond plans fall within the definition of "farming operation" is more difficult. The storage of soybeans alone does not constitute a "farming operation." *In re Haschke,* 77 B.R. 223, 225 (Bankr.D.Neb. 1987). However, the storage of soybeans as part of a continuing farming effort would be sufficient to sustain a Chapter 12

petition. If the farmer is storing the crop but has abandoned all farming operations at the time of the filing of the petition, then the Chapter 12 petition must be dismissed. On the other hand, if the farmer is storing the crop and has not abandoned farming, the storage would constitute part of the on-going operation of the farm. In other words, a farmer who harvested soybeans in 1985, ceased the active tilling of the soil, but continues to plan the reorganization of his farming operation is "engaged in a farming operation." *In re Middleton*, 45 B.R. 744, 747 (Bankr.D.Minn.1985) (present intent to continue farming relevant to inquiry of whether debtors are "farmers" under old § 101(17)); *see In re Armstrong*, 812 F.2d 1024, 1031 (7th Cir.1987) (Cudahy, J., dissenting) (stating that, if farmer shows he or she plans to till land in the future, monies derived from rental of land should be considered product of "farming operation"), *cert. denied*, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987); *In re Coulston*, 98 B.R. 280, 281, 284 (Bankr.E.D.Mich.1989) (holding debtor's intent to return to farming relevant in determining whether rental of leased land arises out of "farming operation"); *In re Hettinger*, 95 B.R. 110, 112 (Bankr.E.D.Mo.1989) (where debtor, with clear and convincing evidence, demonstrates intent to save farming business, monies derived from rental of land arise out of "farming operation"); *In re Paul*, 83 B.R. 709, 713 (Bankr.D.N.D.1988) (debtors intending to continue their farming operation are "family farmers"); *In re Burke*, 81 B.R. 971, 976–77 (Bankr.S.D. Iowa 1987) (courts must focus on whether cessation of farming activity is temporary when determining whether monies obtained through leasing of farmland arise out of "farming operation"); 2 Collier on Bankruptcy 101–55 (L. King 15th ed. 1989) ("If the cessation is only temporary, however, due to financial setbacks, and the debtor intends to resume farming in connection with the debtor's chapter 12 case, the debtor may nonetheless be held to be engaged in a farming operation." (footnote omitted)). The farmer is not required to have a particular farming activity in mind, although an activity such as catfish farming would be relevant as evidence that he or she had not abandoned farming. *See In re Sugar Pine Ranch*, 100 B.R. 28 (Bankr.D. Or.1989) (holding harvest of marketable timber on sustained yield basis constitutes "farming operation"); *In re Maike*, 77 B.R. 832, 835 (Bankr.D.Kan.1987) ("Farmer status should not depend on the court's recognition of the debtor's enterprise as a traditional farming enterprise."); *but see In re Cluck*, 101 B.R. 691 (Bankr.E.D.Okla.1989) (holding horse breeding business does not constitute "farming operation"). Thus, we conclude that the court below erred in holding that the Watfords' plan to engage in catfish farming was irrelevant.

The standard we adopt today is whether, in view of the totality of the circumstances, the debtor intends to continue to engage in a "farming operation" even though he or she was not engaged in the physical activity of farming at the time the petition was filed. The reason for this inquiry into the intent of the debtor is that we must "determine whether there is a 'farming operation' within the context of § 101(17) [now § 101(20)] in light of the fact that the operation of the entity for whom Chapter 12 was passed to aid might have been drastically altered just prior to filing due to the very economic stress Chapter 12 was passed to alleviate." *In re Mikkelsen Farms*, 74 B.R. 280, 284 (Bankr. D.Or.1987).

In holding that the Watfords' intent to continue farming is relevant, we reject the contrary implication in the language of footnote 2 of *In re Armstrong*, 812 F.2d 1024, 1028 (7th Cir.1987). Congress' intent in passing Chapter 12 of the Bankruptcy Code was to allow farmers to keep their land despite their financial troubles. *See In re Vernon*, 101 B.R. 87, 89 (Bankr.E. Mo.1989); *In re Welch*, 74 B.R. 401, 405 (Bankr.S.D.Ohio 1987); *In re Mary Freese Farms*, 73 B.R. 508, 509 (Bankr.N.D.Iowa 1987). Congress was also concerned that family farmers only—not tax shelters or large corporations—benefit from the provisions of Chapter 12. *See In re Vernon*, 101 B.R. at 89; *In re Welch*, 74 B.R. at 405; *In re Mikkelsen Farms*, 74 B.R. at 285.

We think that our approach better serves Congress' intent than does the approach of *Armstrong's* footnote 2: "Clearly, Congress did not intend that farmers who make sound business decisions pre-bankruptcy in an effort to remedy their financial woes [through leasing their land or allowing it to lie fallow] should be excluded from Chapter 12 relief when their immediate intention is to reorganize by actually farming." *In re Rott,* 73 B.R. 366, 373 (Bankr.D.N.D.1987); *see In re Vernon,* 101 B.R. at 90; *In re Coulston,* 98 B.R. 280, 282–83 (Bankr.E.D.Mich.1989); *In re Hettinger,* 95 B.R. 110, 112 (Bankr.E.D.Mo. 1989); *In re Burke,* 81 B.R. 971, 976 (Bankr.S.D.Iowa 1987) ("To engage in a narrowly focused inquiry [such as looking only at the risks involved in the activity] would result in excluding some debtors whom Congress sought to protect"). The footnote in *In re Armstrong* expressed concern that a test such as the one which we adopt today would encourage farmers to lie about their intentions of returning to farming. However, as recognized in *In re Coulston,* 98 B.R. at 281 n. 1, "distinguishing truths from untruths is an inherent function of the courts, *see e.g. In re Sobel,* 37 B.R. 780, 784 (Bankr.E.D.N.Y.1984), and a fear that some debtors will lie to achieve relief is a disingenuous reason to establish a hard and fast rule which denies truthful debtors relief." In addition, we agree with the court in *In re Rott:* "this court does not believe that judicial economy, procedural convenience, and predictability should be placed above the flexible nature of the Bankruptcy Code, and the objective of reaching just and equitable results for both parties." 73 B.R. at 371–72 (holding that gross income need not be defined as rigidly by bankruptcy courts as it is for tax purposes).

Therefore, we adopt the totality of the circumstances test which has been used by many bankruptcy courts to determine whether income arose out of a "farming operation." *See, e.g., In re Vernon,* 101 B.R. 87, 91 (Bankr.E.Mo.1989); *In re Sugar Pine Ranch,* 100 B.R. 28, 31 (Bankr.D. Or.1989); *In re Coulston,* 98 B.R. 280, 281–83 (Bankr.E.D.Mich.1989) ("Most courts which have considered the question [of which test to apply] post-*Armstrong* have adopted a totality of the circumstances approach."); *In re Hettinger,* 95 B.R. 110, 112 (Bankr.E.D.Mo.1989); *In re Paul,* 83 B.R. 709, 712 (Bankr.D.N.D.1988) (majority of courts have adopted "totality of circumstances" test); *In re Burke,* 81 B.R. 971, 976 (Bankr.S.D.Iowa 1987); *but see In re Krueger,* 104 B.R. 223, 226 (Bankr.D. Neb.1988) (holding risk-laden test should be applied); *In re McKillips,* 72 B.R. 565, 568–69 (Bankr.N.D.Ill.1987) (same).

In summary, we hold that the Watfords' stone crabbing business does not fall within the definition of "farming operation." To this extent, we affirm the district court. However, in regard to the Watfords' activities of storing soybeans and planning commercial fish ponds, we conclude that the bankruptcy court and the district court applied an incorrect legal standard in addressing whether or not the Watfords were engaged in a "farming operation" at the time of filing their Chapter 12 petition. Thus, we vacate the judgment below in this regard and remand for a determination of whether the Watfords had abandoned all farming operations at the time of the filing, or whether under the totality of the circumstances the Watfords had not abandoned all farming operations, but rather were planning to continue farming operations in the form of commercial fish ponds or otherwise.[1]

AFFIRMED in part, VACATED in part and REMANDED.

---

1. Since the district court did not address the cash collateral issue, we find it appropriate for the district court to address the issue in the first instance.