**In re Ruben D. LAMB, Debtor.**

**Bankruptcy No. 96–53108.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 25, 1997.

Walter W. Kelley, Albany, GA, Chapter 12 Trustee.

Ben F. Easterlin, IV, William H. Dudley, Americus, GA, for Debtor.

Jerome L. Kaplan, James P. Smith, Macon, GA, for Rochelle State Bank.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Dismiss or in the Alternative, To Determine Eligibility of Debtor by Walter W. Kelly ("Trustee"). Trustee contends that Ruben D. Lamb ("Debtor") does not meet the eligibility requirements for Chapter 12. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor holds a one-third partnership interest in DO–MY Dairy, a partnership entity which filed a Chapter 12 petition on March 4, 1996. In its Statement of Financial Affairs, DO–MY Dairy listed its 1995 income as $255,000 from dairy operations and $110,000 from well-drilling operations. Debtor filed his Chapter 12 petition on August 6, 1996. Debtor's Statement of Financial Affairs listed dairy and well-drilling income for 1995 identical to that listed by the DO–MY Dairy partnership.

Debtor's 1995 federal income tax return shows inconsistent amounts. It lists gross income from dairy operations as $267,076 (as compared to $255,000 in the DO–MY Dairy Statement of Financial Affairs) and gross income from Debtor's well-drilling operations as $42,905 [1] (as compared to $110,000 in the DO–MY Dairy Statement of Financial Affairs). Debtor's tax return also lists $3,200 as capital gains, $4,931 in interest income, $2,400 in non-farming wages, and $37,000 in rents received for farm land.

### Conclusions of Law

Trustee contends Debtor does not meet the eligibility requirements of Chapter 12. Under the Bankruptcy Code, "[o]nly a family farmer with a regular annual income may be a debtor under Chapter 12 of this title." 11 U.S.C. § 109(f). The Code defines a "family farmer" as follows:

individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, *and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.* ...

11 U.S.C. § 101(18)(A) (emphasis added).

In the present case, the parties agree that the question of whether Debtor meets the eligibility requirements of Chapter 12 turns on the issue of whether greater than fifty percent of Debtor's 1995 income came from farming operations. In order to make this determination, the Court must examine the meanings of the terms "gross income" and "farming operation" in the portion of Section 101(18)(A) emphasized above.

### "Gross Income"

The Bankruptcy Code does not provide a definition for "gross income." In statutory interpretation, "[t]he plain meaning of the legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Given this rule of interpretation, this Court concludes that Congress intended the term "gross income" to have its ordinary

---

1. Debtor's federal tax return indicates that gross *receipts* were $101,097.00. Perhaps this is the number which Debtor was thinking of when he listed $110,000.00 on the Statement of Financial Affairs. Such an error might explain this inconsistency.

Tax Code meaning. Since Congress drafted the Tax Code as well, it is logical to conclude that they fully understood the implications of using these terms of art. Furthermore, the language speaks of "gross income for the *taxable year* preceding the *taxable year* in which the case ... was filed." 11 U.S.C. § 101(18)(A) (emphasis added). Such diction makes inescapable the conclusion that Congress intended on importing the Tax Code definition to the Bankruptcy Code.

■ The Tax Code defines "gross income" as "all income from whatever source derived ..." 26 U.S.C. § 61(a). This provision includes a noncomprehensive list of sources of gross income. One of these sources is "Distributive share of partnership gross income." *Id.* § 61(a)(13). Even though a partner's "gross income" includes his distributive share of gross income of the partnership, this number does not appear on the partner's tax return. Instead, when calculating his income tax, a partner reports his distributive share of the partnership's gains and losses. 26 U.S.C. § 702(a). Thus, while the income section of a partner's actual tax return may include a loss attributable to his partnership share, one should not mistake such loss as a partner's gross income. Rather, the partner's gross income, under the Tax Code definition, would include his distributive share of that amount listed as gross income on the partnership's return. *See* 26 U.S.C. § 702(c) ("In any case where it is necessary to determine the gross income of

the partner for purposes of this title, such amount shall include his distributive share of the *gross income* of the partnership." (emphasis added)). Indeed, the contrary conclusion that a partner's "gross income" should include partnership losses would yield absurd results in violation of the principles of *Ron Pair*. That interpretation would prevent a partner whose primary source of income was derived from partnership farming operations from qualifying as a Chapter 12 Debtor if the partnership had a loss in the taxable year prior to filing bankruptcy. Such a debtor, who may be in need of Chapter 12 relief, is likely to show losses in his farming operations.

### *"Farming Operation"*

■ Using the Tax Code definition of "gross income," the Court must determine whether Debtor meets the eligibility requirements for a Chapter 12. Debtor's gross income from dairy farming, as listed on Schedule F of his 1995 federal return, is $267,076.00.[2] Since Debtor has a one-third interest in the partnership, his distributive share of this amount which is to be included in his gross income is $89,025.33. Debtor's gross income from sources other than DO–MY Dairy total $90,436.00.[3] Included in this total is $37,000.00 in rents received from farm land. The Court must determine whether this source of income qualifies as a "farming operation." If it does not, then less

---

**2.** DO–MY Dairy's Statement of Financial Affairs lists $255,000 as its 1995 income. The Court is not certain whether the $267,076 listed on Schedule F of Debtor's return is income solely derived from DO–MY Dairy or not. However, this is of no consequence to the Court's analysis. No matter which amount the Court uses to calculate Debtor's Chapter 12 eligibility, the case still turns on the characterization of certain farm land rental income.

**3.** This total is calculated by adding the following sources and amounts of gross income:

| source | amount |
| --- | --- |
| well drilling | $42,905 |
| capital gain | $ 3,200 |
| wages | $ 2,400 |
| rents received | $37,000 |
| interest earned | $ 4,931. |

Note that Debtor filed a joint tax return with his wife in 1995. This bankruptcy case, however,

has been filed by Debtor in his individual capacity. This fact adds a peculiar twist to the analysis. The amount which the Court has considered as Debtor's gross income excludes $11,406 of annuity income earned by Debtor's wife individually and reported on their joint return. All other sources of income on the joint return were either in Debtor's name individually or both spouses' jointly. As such, these amounts were all used in the calculation of Debtor's gross income for purposes of this Chapter 12 eligibility analysis. This distinction of income is only offered for informative purposes since inclusion of Debtor's wife's income would not change the outcome of this case. If the $11,406 were included in Debtor's gross income, he would be even further from qualifying under the income test of 11 U.S.C. § 101(18)(A). However, this gap would not be enough to change the fact that the determination as to whether the $37,000 in farm land rental income qualifies as a "farming operation" is still dispositive of the question.

than fifty percent of Debtor's 1995 gross income came from farming operations, and Debtor would not meet the eligibility requirements of Chapter 12. If, however, the rent income is properly characterized as "farm income," then Debtor would qualify for Chapter 12 relief.

According to the Bankruptcy Code, " 'farming operation' includes farming, tillage of soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." There is a split in authority regarding the issue of whether rental income from farm land is income from a "farming operation." One line of cases holds that farm land rental income should not be characterized as farm income because the traditional risk of farming is lacking. *See, e.g, Armstrong v. Corn Belt Bank (In re Armstrong)*, 812 F.2d 1024, 1027 (7th Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987) (considering the meaning of "farming operation," but within the definition of "farmer" now found at 11 U.S.C. § 101(20)). The Eighth Circuit has led the way for another line of cases holding that for rental income from farm land to be considered "farm income," the debtor must have some degree of involvement in the farming operation taking place on that rented land. *See Otoe County Nat'l Bank v. Easton (In re Easton)*, 883 F.2d 630 (8th Cir.1989). Specifically, the Eight Circuit stated that the debtor must show that he "had some significant degree of engagement in, played some significant operational role in, or had an ownership interest in the crop production" occurring on the rented land. *Id.* at 636. A third line of cases has held that the issue is properly

determined on a case-by-case basis in light of all relevant circumstances. *See. e.g., In re Vernon*, 101 B.R. 87 (Bankr.E.D.Mo.1989) (rent was farm income where lease was terminable at will and the income was necessary to save debtor's farm). The Eleventh Circuit has adopted, in agreement with the *Vernon* line of cases, a "totality of circumstances" test for determining whether income arose out of a "farming operation." *See Watford v. Federal Land Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1529 (11th Cir.1990).[4]

Taking into account all relevant circumstances, as *Vernon* requires, the Court holds that the farm land rental income in question arose out of a "farming operation." Debtor was, himself, engaged in farming operations through his partnership interest in DO–MY Dairy. It is not unusual for a farmer to rent some of his farm land to other farmers as part of his business plan. In addition, the Court deems the usage by the lessee of such farm land significant in its analysis. If the lessee uses the rented land for farming operations, some of the risks of farming are indirectly imparted to the lessor, thereby supporting a conclusion that the rental income from such property should itself be considered income from a "farming operation." In the present case, no evidence has been offered indicating that the land was used by lessee for any purpose other than farming operations. Thus, under the circumstances of this case, the Court finds that the rental income of $37,000 was income which arose out of a farming operation in accordance with 11 U.S.C. § 101(18) & (21).

In the final calculations for the income test of Section 101(18), Debtor's gross income

---

4. In support of adopting the totality of circumstances test, the Eleventh Circuit explained that " 'judicial economy, procedural convenience, and predictability should [not] be placed above the flexible nature of the Bankruptcy Code, and the objective of reaching just and equitable results for both parties.' " *Watford*, 898 F.2d at 1529 (quoting *In re Rott*, 73 B.R. 366, 371–72 (Bankr.D.N.D.1987)). It is interesting to note that *Rott*, the case which the Eleventh Circuit quoted in support of this proposition, held that gross income does not need to be defined as rigidly for bankruptcy purposes as it is for tax purposes. 73 B.R. at 371–72. This fact presents an ironic twist since this Court in the case under consideration here is holding that "gross in-

come" should be defined as rigidly as it is for tax purposes. This decision is not in conflict with the Eleventh Circuit holdings on the "gross income" issue. *Watford* stands for the narrow proposition that the totality of circumstances test should be used when determining whether something qualifies as a "farming operation." It is an unfortunate coincidence that, in explaining its holding, the Eleventh Circuit cited a case from another jurisdiction which happens to disagree with this Court's holding that "gross income" in 11 U.S.C. § 101(18) should be defined as it is in the Tax Code. It is not this Court's understanding that the Eleventh Circuit meant to express any opinion in the *Watford* case regarding the "gross income" issue.

from farming operations is \$126,025.33,[5] and Debtor's gross income from other sources is \$53,436.00.[6] Since more than fifty percent of Debtor's gross income arises from farming operations, Debtor meets the income test of Section 101(18). Furthermore, since no evidence has been offered suggesting that Debtor fails to meet any of the other tests of Section 101(18), this Court holds that Debtor meets the eligibility requirements of Chapter 12.

An order in accordance with this opinion will be entered on this date.

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby

ORDERED that Trustee's Motion to Dismiss or in the Alternative, To Determine Eligibility of Debtor is DENIED to the extent that it asks for the Court to dismiss the case; it is hereby further

ORDERED that Debtor meets the eligibility requirements of Chapter 12.

---

5. This total is calculated by adding Debtor's one-third partnership share of DO–MY Dairy's gross income (\$89,025.33) and the rental income from farm land (\$37,000.00) now determined to have arisen from a "farming operation" in accordance with the Chapter 12 eligibility requirements.

6. This total is calculated by subtracting the rental income from farm land (\$37,000.00) from the income previously determined to have arisen from sources other than DO–MY Dairy (\$90,-436.00).