**In re Herschel L. WOLLINE, Jr., Debtor.**

**Bankruptcy No. 86–05556.**

United States Bankruptcy Court, E.D. Wisconsin.

April 28, 1987.

Robert J. Joling, Kenosha, Wis., for debtor.

Jeffrey J. Davison, Kenosha, Wis., for First Bank Southeast, N.A.

Thomas J. King, Oshkosh, Wis., Chapter 12 trustee.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The issue is whether Herschel L. Wolline, Jr. ("debtor"), qualifies as a "family farmer" within the meaning of Chapter 12 which was created as part of "The Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986" (P.L. 99–554, effective November 27, 1986). The debtor filed a petition under Chapter 12 of the Bankruptcy Code on December 31, 1986. First Bank of Southeast, N.A., a secured creditor, has filed a motion to dismiss that petition on the basis that the debtor does not meet the criteria of a family farmer under 11 U.S.C. § 101(17)(A) which require that:

1. More than 50 percent of the debtor's gross income for the year preceding the year in which the debtor filed his Chapter 12 petition must have arisen from the debtor's farming operation. In this case, the year in which the gross income is to be measured is 1985, and

2. At least 80 percent of the debtor's aggregate debt for such year must have arisen from the debtor's farming operation.[1]

---

1. The parties have stipulated that the court's ruling be limited to the first requirement of whether more than 50 percent of the debtor's gross income is derived from farming. If the court decides this question in the affirmative, First Bank stated it would forego any inquiry into whether at least 80 percent of the debtor's aggregate debt arose from the debtor's farming operation. By the same token, if the court decides this question in the negative, the debtor has conceded he is not eligible for relief under Chapter 12.

Since 1960, the debtor has owned and maintained horses which are used for horse riding, trail rides and hay rides. He has also leased and occasionally sold some horses. The debtor also operates a dairy farm. All of these activities are performed upon his 80 acre farm located in the country approximately six miles from Elkhorn, Wisconsin. He lives on this farm. All of these operations are run by the debtor with the help of two full-time employees. From time to time, he has also employed other persons on a part-time basis. The debtor presently has approximately 41 head of cattle (which includes 20 cows) and approximately 65 horses. He maintains his horses and feeds them from crops grown upon his farm, supplemented by outside purchases. The horses graze upon the debtor's farmland. Approximately 15–20 of the horses presently on hand were bred by the debtor. The balance of the herd was purchased by him. The crops which are grown, consisting of corn and hay, are used solely to feed his livestock, including both the cows and horses. The milk which he produces and some beef are sold by the debtor to the public.

■ It is the unique combination of the debtor's method of running a dairy farm in conjunction with maintaining horses used for riding and leasing which creates the issue of whether his activities constitute one inseparable operation or should be bifurcated for purposes of defining "farming operation" under Chapter 12. If the debtor owned or leased land solely for horseback riding purposes without residing on the land, this court would have no difficulty in concluding that he did not run a farming operation. On the other hand, if the debtor engaged solely in milking cows and growing crops, this would just as clearly constitute a farming operation. The debtor's business operation falls somewhere between these two extremes. Because of his long-established method of doing business and, also, because he is neither a large entrepreneur with income from clearly non-agricultural sources nor a "gentlemen farmer," he is a "family farmer" within the meaning of Chapter 12. In reaching this conclusion, the court has taken into account the following factors: the debtor lives on the farm, breeds a substantial portion of his horses, the horses graze upon his farmland and crops grown on the farm are used solely to feed the horses and cows. In addition, horse manure, a bi-product of his horses, is utilized for his crops, and the debtor's draft horses are used for hauling and spreading horse manure and for cutting weeds on the farm. The income from all of his operations is placed into one checking account. Income generated from his horses is used to help finance his dairy operation, and income from the dairy farm is, similarly, used to help finance his horse operation. Janet Hintz, the debtor's sister, handles the books and records. She testified that the income generated is used "wherever we need it."

The court must first construe "farming operation" under 11 U.S.C. § 101(20) which, in turn is a necessary ingredient in defining "family farmer" under 11 U.S.C. § 101(17)(A) [2]. This determination can only be made on a case-by-case basis in the light of the underlying policy of Chapter 12. Senator Charles Grassley (R–Iowa) one of the drafters of Chapter 12, stated:

> "Though the purpose is to give family farmers a fighting chance to reorganize

2. 11 U.S.C. § 101(17) "family farmer" means—
  (A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive

from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.
11 U.S.C. § 101(20) "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

their debts, the provisions ensure that only family farmers—not tax-sheltered or large corporate entities—will benefit." (132 Cong.Rec.S. 15076 [October 3, 1986])

The debtor in this case neither operates a tax shelter nor is a large corporate entity. He is also not a person who farms as a hobby farmer. Quite to the contrary, he meets the description of the type of person intended to be protected under Chapter 12. Once it is understood who is to be excluded from Chapter 12, the terms "family farmer" and "farming operation" should then be interpreted liberally. *In re Blanton Smith Corp.*, 7 B.R. 410 (Bankr.M.D.Tenn. 1980), asserts that "farming operation" should be afforded a broad construction. In a recent decision, *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.), decided Feb. 9, 1987, the Seventh Circuit endorsed *Blanton Smith.*

The term "farming operation" as used in 11 U.S.C. § 101(20), contains examples of the types of activity intended to be encompassed. That list is not inclusive. It is illustrative only and includes "ranching" and "raising of livestock." Although this debtor's operation does not completely fall within either of these particular categories, it is closely related to "ranching" and "raising of livestock." In view of this and because the debtor also operates a dairy farm, his overall operation constitutes a "farming operation." Looking at this from another perspective, this debtor is faced with the same disadvantages of Chapter 11 (namely—Chapter 11 being needlessly complicated, unduly time-consuming, inordinately expensive and unworkable) and the same risks of farming (disease and bad weather) which apply to the conventional farmer and which led to the enactment of Chapter 12.

■ The debtor has described his principal business as "recreational" and his principal business code as "horse trail rides" in Schedule C of his 1985 federal income tax return. He also excluded that portion of

his income derived from the operation of horses from Schedule F (farm income and expenses). These factors, however, are not any more controlling than is the debtor's description of his occupation as a "farmer" (page 1 of his 1985 federal income tax return). However he described his activities for income tax purposes is not determinative upon whether he is a "farmer" within the context of Chapter 12. It is the nature of his activities, rather than any labels which may have been placed upon them, which is important. This court is aware of a recent decision, *Matter of Wagner*, 808 F.2d 542 (7th Cir.1986), declaring that "gross income" under 11 U.S.C. § 101(19)[3] (which is the definition for a "farmer") should be given its technical federal income tax meaning. Presumably, *Wagner* would extend that ruling to 11 U.S.C. § 101(17)(A) (which is the definition of a "family farmer"). In *Wagner*, the funds which the debtor withdrew from his IRA account and were previously reported as farming income, no longer were considered farming income when they were drawn out, but were still considered part of the debtor's gross income. The *Wagner* ruling does not mean that this court must find under the particular facts involved that the debtor is not a "family farmer."

*Aetna Casualty and Surety Company v. The Brethren Mutual Insurance Company*, 38 Md.App. 197, 379 A.2d 1234 (1977), in defining "farming" for insurance coverage purposes, states:

"We do not think it can be said that the record before us shows that the raising of horses as conducted is not farming. It certainly is a form of farming and was incidental to that occupation from the earliest times. The farmer needs to raise animals quite as much as crops of wheat and corn. Some specialize in one branch of the enterprise and others in a different branch, but animal husbandry is as important for the success of farming as the growing of grain, corn and

---

**3.** § 101(19) under the Bankruptcy Code was previously numbered § 101(17) until the enactment of "The Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986."

hay." (Quoting from *Stout v. Mitschele*, 135 N.J.L. 406, 52 A.2d 422 [1947])

All of the debtor's activities are inextricably intertwined and dependent upon each other. In responding to the Bank's motion to dismiss this Chapter 12 petition, this court replies "nay." The debtor, under the particular facts and circumstances presented, is a family farmer and is entitled to be included under the umbrella of Chapter 12.

The debtor, therefore, wins by a nose.

## ORDER DENYING MOTION
## TO DISMISS

On January 22, 1987, a motion to dismiss the petition of the debtor for relief under Chapter 12 was filed by First Bank of Southeast, N.A., a secured creditor. On February 6, 1987, the debtor filed an objection to the motion to dismiss. On April 10, 1987, an evidentiary hearing was conducted, and the parties have submitted briefs to the court. The court has this date rendered its decision which stands as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Based upon the foregoing,

IT IS ORDERED that the motion of First Bank of Southeast, N.A. to dismiss this case be and the same is hereby denied.