as prohibited by § 361(3) but as additional protection to the Bank.

### In the Matter of Stephen BURKE, Darlene Burke, Engaged in Farming, Debtors.

### Bankruptcy No. 87–168–D.

United States Bankruptcy Court, S.D. Iowa.

Dec. 2, 1987.

Michael W. Fay, Springville, Iowa, for debtor.

John M. Titler, Cedar Rapids, Iowa, for FLB.

Michael McDonough, Cedar Rapids, Iowa, for PCA.

Elizabeth A. Nelson, Des Moines, Iowa, Trustee.

## ORDER ON MOTION TO DISMISS

LEE M. JACKWIG, Chief Judge.

On August 19, 1987 a hearing on the standing Chapter 12 trustee's motion to dismiss and the debtors' resistance thereto came on for hearing in Davenport, Iowa. The trustee filed her motion to dismiss on April 9, 1987. The debtors resisted on April 22, 1987. The Federal Land Bank (FLB) joined in the trustee's motion on May 11, 1987. The Production Credit Association of the Midlands (PCA) orally joined in the trustee's motion at the hearing. Michael W. Fay appeared on behalf of the debtors. Elizabeth A. Nelson, standing Chapter 12 trustee, was present. John M. Titler appeared on behalf of the FLB and Michael McDonough appeared on behalf of the PCA. The case has been submitted on the testimony of the debtors, documentary evidence and a transcript of the deposition of debtor Stephen Burke.

### FACTUAL BACKGROUND

The debtors have been farming in the Clinton County area since 1960. During the past few years, their 297 acre farm has been primarily devoted to row crops. In the fall of 1985 a corporation was formed. The principals of the corporation are three of the debtors' children. The debtors are not shareholders of the corporation. The debtors leased the farm to the corporation for the 1986 crop year on a 60/40 crop share basis. Schedule E of the debtors' 1986 federal tax return shows that the debtors received rents in the amount of $22,609.00. Schedule F reveals that the

debtors received farm related gross income in the amount of $15,277.00. At the hearing, some confusion arose as to the source of the $15,277.00. Review of the deposition and the debtors' testimony suggests that the $15,277.00 was part of the rental payments encompassed within the $22,609.00 figure contained in Schedule E.

The 1986 tax return also states that the debtors received $29,777.00 in wages, $624.00 in dividends and $516.00 in capital gains. The corporation employed Stephen in 1986, and he provided the corporation with most of its labor. The debtors own the machinery that was used to farm the land. During 1986 Stephen received $10,-000.00 in wages from the corporation. $12,500.00 of the $29,777.00 wage figure was purportedly from wages Darlene received from the corporation. Darlene however received no wages from the corporation in 1986. The debtors amended their returns to reflect this. Darlene received approximately $7,277.00 in wages from her work at a deli.

The debtors' income for 1986 is summarized as follows:

| | |
|---|---|
| Rental income | $22,609.00 |
| Stephen Burke's wages | $10,000.00 |
| Darlene Burke's wages | $ 7,277.00 |
| Dividends | $ 624.00 |
| Capital gains | $ 516.00 |

## DISCUSSION

Only family farmers with regular annual income are eligible for protection under Chapter 12. 11 U.S.C. section 109(f). In order for an individual or an individual and a spouse to qualify as family farmers, they must be engaged in farming and (1) have aggregate debts that do not exceed $1,500,-000.00; (2) have at the date of filing at least 80% of their aggregate noncontingent, liquidated debts arising out of a farming operation owned or operated by them (excluding a debt for the principal residence unless the debt arises out of a farming operation); and (3) have received, during the taxable year preceding the one in which bankruptcy was filed, more than 50% of their gross income from the farming operation. 11 U.S.C. section 101(17)(A).

Only a challenge to the income criterion is before the court. The trustee, FLB and PCA contend that the 50% requirement is not met because Stephen's wages and the rental income are not income arising out of a farming operation.

In addressing this eligibility issue, the court first turns to 11 U.S.C. section 101(20) which defines "farming operation" as including:

[F]arming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock and production of poultry or livestock products in an unmanufactured state.[1]

A number of courts have examined the "farming operation" concept both in the context of involuntary proceedings and in Chapter 12 settings. In *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987), cert. denied, — U.S. —, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987), Bernard Armstrong challenged a creditor's attempt to place him in involuntary bankruptcy pursuant to 11 U.S.C. section 303(a). The debtor argued he was immune from involuntary bankruptcy since he qualified as a farmer under section 101(19).[2] The creditor maintained that the income Mr. Armstrong received from the sale of machinery and from renting his land was not income from farming. Excluding either of these sources of income

---

1. Prior to passage of Chapter 12, the definition of "farming operation" was contained in section 101(18). Now paragraphs (17) through (49) have been redesignated as paragraphs (19) through (51) respectively. Bankruptcy Judges, United States Trustees and Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, section 251, 1986, U.S. CODE CONG. & ADMIN.NEWS (pamphlet 10A). All references to section 101 in this order reflect these changes.

2. 11 U.S.C. section 101(19) defines a farmer as a "person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person". This provision construed in tandem with section 101(20) has proven critical in a section 303(a) case (prohibits the commencement of involuntary Chapter 7 or Chapter 11 cases against farmers).

from income received from a farming operation meant that the debtor would not satisfy the 80% rule of section 101(19). In examining the nature of the income received from the sale of machinery, the court found that the means with which to farm was implicit in the section 101(20) definition of "farming operation". The Seventh Circuit concluded that money received by a farmer from the sale of machinery to scale down an operation is farm income. It noted that a contrary result would be illogical and undesired. The court explained that a farmer who harvested a crop, had no significant nonfarm income and decided to sell machinery might be considered a nonfarmer if the income from the sale was not deemed to be income received from a farming operation.

With respect to the rental income, the Seventh Circuit ruled that such income did not arise from a farming operation. The court observed that Mr. Armstrong received the rent payment in cash and up front. Finding that this type of arrangement did not expose the debtor to the risks inherent in agricultural production, the court ruled that the rental income was not derived from farming. Judge Cudahy dissented from the majority's assessment of the rental income issue. He found the essential question to be whether the land rental was an integral part of the farm operation. Prior and proposed uses of the land were relevant in answering the question. He agreed that the element of risk played an important role in the inquiry but did not accept that receiving rent at the outset of a lease necessitated finding that the rental income was *not derived from a farming operation*. Rather, Judge Cudahy urged examination of "the totality of the circumstances".

*In re Mary Freese Farms, Inc.*, 73 B.R. 508 (Bankr.N.D.Iowa 1987) entailed a corporate landlord who contributed nothing more to the farm operation than negotiating the lease. Relying heavily upon *Armstrong*, the bankruptcy court put particular

emphasis on the lack of risk involved in the debtor's relationship with its tenant and found that the corporation was not a "family farmer" as defined by section 101(17)(B).[3] The court noted that the rent was due and payable despite the fact yields might be reduced because of weather or management practices. It is important to note that the shareholders had not farmed the land for several years and did not own livestock or farm equipment.

In *In re Guinnane*, 73 B.R. 129 (Bankr. D.Mont.1987), the question before the court was whether the income a debtor earned from trucking cattle that belonged to third parties was farm income. The court admitted that the question was a close call. Finding that the hauling of cattle for third parties was directly related to the debtors' farming operation, the court ruled that the income came from farming. The court observed that the trucking aided the ranching operation and that the income resulted from the debtors' efforts, not the efforts of others.

The concept of risk played an important role in *In re McKillips*, 72 B.R. 565 (Bankr. N.D.Ill.1987). The principal issue was whether the income derived from a horse breeding, training and showing operation was farm income. The court found that only the breeding and raising of horses for sale and the actual selling of horses constituted a farming operation. In contrast, the court found that raising, training and showing horses belonging to others for a fee were not activities included within the definition of "farming operation." The court reasoned that such activities were more service oriented and not directed at producing a farm product. Additionally, the debtors' profit from the training and showing enterprises was not at the mercy of the weather or the farm economy.

In *In re Rott*, 73 B.R. 366 (Bankr.D.N.D. 1987), the bankruptcy court declined to apply the *Armstrong* risk analysis in a wooden manner in considering whether cash

---

**3.** 11 U.S.C. section 101(17)(B) sets forth the requirements a corporation or a partnership must meet in qualifying for Chapter 12 relief. There is no income test but more than 80% of the value of the assets of the debtor must be related to the farming operation and family members or relatives must conduct the farming operation.

rent the debtors received from leasing their land to their son in an effort to save the farm was farm income. The court distinguished *Armstrong* by noting that the cash rent arrangement was subject to risks inherent in farming—the debtors received their rent only because their son earned enough to pay them. Moreover, the court emphasized that the debtors and their son were working in an intertwined fashion as a family farm operation and, therefore, the rental income had to be characterized as income from a farming operation.

In the case of *In re Wolline*, 74 B.R. 208 (Bankr.E.D.Wis.1987), the debtor ran a dairy operation and maintained horses for riding and leasing. A creditor contended that the income from the latter activity did not constitute income from a farming operation. In rejecting this argument, the court opted for a broad construction of "farming operation". The court observed that the horse enterprise was closely related to ranching and the raising of livestock and that the debtor faced the same risks which apply to the conventional farmer.

Also at issue in *Wolline* was the effect of tax returns on the eligibility issue. The debtor described the horse enterprise as "recreational" on Schedule C of his 1985 federal income tax return. None of the income from the horse operation was reported as farm income and expenses on Schedule F. The court ruled that the income tax declarations were not determinative of whether a debtor was a "farmer" for purposes of Chapter 12. It was "the nature of his activities, rather than any labels which may have been placed upon them, which is important." *In re Wolline*, 74 B.R. at 210. The court found that *Matter of Wagner*, 808 F.2d 542 (7th Cir.1986) did not control the case. In *Wagner*, the Seventh Circuit held that "gross income" as used in 11 U.S.C. section 101(19) be given a tax code meaning.

The court in *In re Mikkelsen*, 74 B.R. 280 (Bankr.D.Or.1987) set out a number of considerations that should be taken into account in determining whether a debtor is conducting a farming operation. The factors included: whether there is a physical presence of family members on the farm; whether the debtor owns traditional "farm assets"; whether leasing out land is a form of scaling down previous farm operations; what is the form of the lease; and whether the debtor ceased all of its own investment of labor and assets to produce crops or livestock. Consideration of these factors led the court to conclude the debtor corporation qualified for Chapter 12. The principals, the members of the farm family, had planted and harvested a crop on the debtors' land. The corporate debtor also owned the farm machinery. With respect to leasing arrangements for the succeeding year, the court observed that the leases were short term and involved local farm tenants and commented that leasing might not have been necessary if family members had not sought off farm employment due to the poor farm economy.

The debtors' past farming activities were significant in finding the debtors eligible for Chapter 12 relief in *In re Welch*, 74 B.R. 401 (Bankr.S.D.Ohio 1987). The creditors questioned the income the debtors received from producing milk on contract, from field hire (planting and fertilizing a crop) and from leasing their land. Relying on a dictionary definition of the verb "farm" and on the legislative history of Chapter 12, the court found "farming operation" encompassed those activities. That the debtors had worked their own land and had engaged in dairy and grain farming for nearly fifteen years was of particular importance to the court.

The inquiry into what constitutes a farming operation was narrowed in scope in *In re Tim Wargo & Sons, Inc.*, 74 B.R. 469 (Bankr.E.D.Ark.1987). The debtor was a corporation whose stock was owned by the Wargo family, which had farmed the 440 acre farm for many years. In 1985 the farm was leased. Finding that the mere ownership of land did not establish that a farming operation was being conducted, the court ruled that the debtor was ineligible for protection under Chapter 12. The court relied to a large extent upon *Armstrong* but cautioned that a strict risk analysis could actually be expanded to non-farm businesses such as farm implement

dealers and suppliers who arguably face the risks of inclement weather and unstable markets.

█ The analysis utilized in the preceding decisions certainly add credence to Judge Cudahy's observation in *Armstrong* that the question of what constitutes a farming operation "allows no neat distinctions". The varied results may be attributed to the scope of a particular court's inquiry in making the "farming operation" determination. For the majority in *Armstrong*, a major consideration was risk. The rental income analysis was confined to an examination of the terms of the debtors' lease with the tenant. In *Tim Wargo & Sons*, an important factor was whether the participation in the farming operation by the family members or relatives of the closely held corporate debtor was active or passive. In cases such as *Rott, Guinnane, Wolline, Welch,* and *Mikkelsen,* the courts examined a number of factors such as the debtor's past activities, the relationship between the questioned activity and activities traditionally associated with farming and the circumstances surrounding any cessation of farming activities. The majority of decisions to date seem to be adopting a "totality of the circumstances" approach advocated by the dissent in *Armstrong.*

This court adopts the latter approach. To engage in a narrowly focused inquiry would result in excluding some debtors whom Congress sought to protect. A familiar example is the "financially distressed farm family" of four who began farming in the mid–1960's, first renting then purchasing land. During the prosperous late 1970's, the family purchased additional land for a price in excess of $2,000.00 per acre. Subsequent high interest rates, foreign production, domestic overproduction, depressed markets and the value of the dollar combined to depress commodity prices. The farm no longer was able to generate sufficient income to service its debt. Some production lenders cut off credit. To make ends meet, the husband and wife obtained at least part-time employment off the farm. Some or all of the land was leased. When negotiations with lenders failed, the farm family sought protection under Chapter 12.

It is the small family farm that Chapter 12 was designed to protect. 132 Cong.Rec. S. 15076 (daily ed. Oct. 3, 1986) (statement of Sen. Grassley). To disqualify this farm family because the income received from leasing the land was not received from a "risk laden" farming enterprise and therefore not derived from a farming operation would seemingly fly in the face of congressional intent. Yet, this court must be mindful of Congress' concern that tax shelters and large corporate farms are not the beneficiaries of Chapter 12's protections. *Id.* Likewise, the focus must be on the "continuation" of farming endeavors and not on reviving abandoned operations. *See In re Tart,* 73 B.R. 78 (Bankr.E.D.N.C. 1987); *In re Tim Wargo & Sons, Inc.,* 74 B.R. 469 (Bankr.E.D.Ark.1987).

Distinguishing between those operations Congress sought to protect from those it did not requires a consideration of a number of factors. In an effort to give the bankruptcy practitioners in this district some direction with respect to what may constitute income from a farming operation and what activities may equate with being engaged in a farming operation or conducting a farming operation, this court sets forth a few general guidelines.

## A. *Leasing Out Farm Land*

### 1) Crop Share Arrangement.

█ Income received from a crop share arrangement typically will be farm income in the case of an individual or individual and spouse.

Such arrangement will not create an irrebutable presumption that a corporate or partnership debtor is engaged in farming. The family members or relatives must take an active role in the operation.

### 2) Cash Rent Arrangement.

█ Income received from a cash rent arrangement will be farm income in the case of an individual or individual and spouse only if the evidence reveals that past farming activities have been more

than short term or sporadic and that any cessation of farming activities is temporary. Consideration will be given to the reason for the cessation (inability to obtain operating credit versus new nonfarm venture); the extent of the cessation (leasing a portion of the farm in an effort to scale back the operation versus leasing the entire farm); and the relationship to the tenant (leasing to family members as opposed to leasing to nonrelated individuals or entities).

Cash rent arrangements with non family members and non relatives will create a rebuttable presumption that a corporate or partnership debtor is not engaged in farming. Such arrangement with family members or relatives will create a rebuttable presumption that the debtor is engaged in farming.

## B. *Sale of Farm Machinery*

■ Income received from the sale of farm machinery will be farm income in the case of an individual or individual and spouse unless the debtors buy, sell or trade machinery in a business fashion *or* unless the sale entails all the machinery and the debtors do not intend to lease or to borrow machinery from another available source.

A total sale will suggest that a corporate or partnership debtor is not engaged in farming. A partial sale will normally be of little probative value.

## C. *Wages, Fees, Payments*

■ Wages, fees or payments that result from a farming activity and relate to the farming operation will usually be farm income in the case of an individual or individual and spouse. "Farming activity" will be liberally construed but must somehow relate to the debtor's farming operation, not the farming operation of others. An individual debtor "engaged in a farming operation" of a family related farm corporation or partnership may claim wages from such entity as farm income absent a showing of abuse of Congressional intent.

## D. *Income Tax Returns*

■ Declarations made on income tax returns are not determinative of whether a debtor is a farmer for purposes of Chapter 12. However, the court does recognize that principles of tax law may be helpful in analyzing issues relating to the term "gross income" as used in section 101(17).

■ Applying the relevant guidelines to the present case, there is no question that the income received from leasing the land is income related to farming since the land was leased on a crop share basis. Even under the restrictive risk analysis approach by the majority in *Armstrong*, income received from this type of lease arrangement would be deemed income received from a farming operation. Designating the rental income as farm income means the 50% requirement of section 101(17)(A) is met.

■ The percentage of the debtors' income that qualifies as income arising from farming increases when one considers that Stephen's wages fall within the ambit of section 101(20). There is no dispute that he received wages from the corporation for his farming activities—planting, cultivating, and harvesting crops. The employer, the corporation, consisted of the debtors' children. Hence, the debtor and the corporation are so intertwined as to be almost indistinguishable. Additionally, the debtors own the machinery used to farm the land.

## CONCLUSION AND ORDER

WHEREFORE, based upon the foregoing analysis, more than 50% of the debtors' income arises from a farming operation.

THEREFORE, the motions to dismiss are denied.