**In the matter of Danny J. BIRCHER, Connie Bircher, Debtors.**

**Bankruptcy No. 98–05437–CJ.**

United States Bankruptcy Court, S.D. Iowa.

July 27, 1999.

Dallas J. Janssen, Des Moines, IA, for debtor.

Carol F. Dunbar, Waterloo, IA, for Chapter 12 Trustee.

G. Mark Rice, Des Moines, IA, for Firstar Bank Iowa, N.A.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Firstar Bank Iowa, N.A. (Bank) filed a motion to dismiss this Chapter 12 case. The Bank contends Danny J. Bircher and Connie Bircher (Debtors) are not eligible for relief under Chapter 12 because they do not meet the Bankruptcy Code's "family farmer" definition. The Debtors resist. The Chapter 12 Trustee filed a written joinder in the Bank's motion but withdrew the joinder at the conclusion of the March 2, 1999 evidentiary hearing on the motion. Both the Bank and the Debtors filed post hearing briefs.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered by the U.S. District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. § 157(b)(2)(A) and (O).

## BACKGROUND

Danny Bircher testified that he has been employed as a welder for Aljon for 25 years.[1] He typically works a 40–hour week but has worked up to 60 hours a week on major construction projects. He indicated his wife has been employed as a licensed practical nurse for Vista Woods Care Center.[2] According to him, she works there between 36 and 45 hours a week.[3]

Danny Bircher further testified that he and his wife have been engaged in farming for approximately 15 years. The Debtors own 360 acres of farmland on which they run a cow/calf operation and raise feed for the livestock.[4] The Debtors stopped using chemicals on their land for three years because they intended to begin planting organic beans in 1998. That decision and poor weather conditions resulted in lower yields for those three years.

Danny Bircher represented that he and his wife would have planted 80 acres in organic beans in 1998 but for more weather problems and also because of actions taken by the Bank. He explained that they sold a 50–acre farm in early March of 1997 at the request of the Bank. Though that farm, acquired in 1974, had been their original homestead and though their daughter lived there rent-free for a time in subsequent years, no one had been living on the property for five years as of the date of sale. They did use some of the farm's pasture ground for livestock in 1996, but not in 1995. The Debtors turned over all the sale proceeds, minus sale costs, to the Bank for payment of an agricultural loan. They held nothing back for taxes.

1. According to Debtors' Schedule I (Current Income of Individual Debtors), Danny Bircher had been employed as a carpenter for TJ Lambrecht Construction for two months as of the petition date.

2. According to Schedule I, Connie Bircher had been employed with the Center for 18 months as of the petition date.

3. Connie Bircher did not testify.

4. According to Paragraph 16 in their Statement of Financial Affairs, the Debtors have been running a cow/calf operation since April 1989.

Danny Bircher further explained that he and his wife did not sell some of their ready livestock in 1997 upon the recommendation of their tax advisor. They did sell livestock in April and November of 1998.[5]

On December 18, 1998 the Debtors filed their petition for relief under Chapter 12 of the United States Bankruptcy Code.

On Schedule D (Creditors Holding Secured Claims), the Debtors reported total liabilities of $290,712.93. They indicated the Bank held a claim for $274,455.75, of which $76,210.45 was unsecured. On Schedule F (Creditors Holding Unsecured Nonpriority Claims), they reported total liabilities of $20,011.34. On Schedule E (Creditors Holding Unsecured Priority Claims), they stated they had no liabilities to report.

In Paragraph 1 of their Supplement to Statement of Financial Affairs (Supplement), the Debtors indicated all of their $310,724.27 debt arises from their farming operation. In Paragraph 2 of the Supplement, they reported "($58,216.00)" gross farm income for 1997. In Paragraph 3 of the Supplement, they listed the following categories and amounts of gross non-farm income for 1997: Wages—$39,627.00; Interest—$69.00; Dividends—$105.00; Capital Gain—$20,107.00. Those amounts total $59,908.00.

In support of its Motion to Dismiss, the Bank points out that the Debtors' 1997 gross farm income was not the net loss of $58,216.00, reported on line 36 of Schedule F (Profit or Loss From Farming) of Debtors' 1997 Federal Tax Return. It was the $33,644.00 figure reported on line 11 of that form. (As reflected on Tax Schedule F, that amount consisted of $23,907.00 from the sale of farm products and $9,737.00 from program payments.) Based on those figures, the Bank concludes the Debtors are not eligible for Chapter 12 relief because they did not receive more than 50 percent of their 1997 gross income from farming.[6] The Bank observes the outcome is the same if the capital gain component of the non-farm income is excluded.[7] The Bank disputes that the capital gain should be considered farm income.

The Debtors on the other hand—and despite their original representation in Paragraph 3 of the Supplement—resist the Bank's Motion on the ground that the capital gain should be considered farm income because it resulted from the sale of farm real estate.[8] They liken the transaction to the sale of breeding stock that they contend would also be reported on Tax Schedule D as a capital gain. With that adjustment to the calculation, the Debtors conclude more than 50 per cent of their 1997 total gross income came from their farming operation.[9]

In further support of its contention the Debtors do not belong in Chapter 12, the Bank observes that the Debtors character-

---

5. According to Paragraph 5a in their Statement of Financial Affairs, the Debtors paid the Bank $4,064.60 in sale proceeds on December 5, 1998.

6. $59,908.00 gross non-farm income—$33,644.00 gross farm income = $93,552.00 total gross income. 50 percent of the total gross income is $46,776.00. Debtors' gross farm income falls short by $13,132.00.

7. $59,908.00 gross non-farm income—$20,107.00 capital gain = $39,801.00. That amount added to the $33,644.00 gross farm income equals $73,445.00, of which 50 percent is $36,722.50. Debtors' gross farm income falls short by $3,078.50.

8. Debtors suggest the actual sale price of the farm real estate rather than the net capital gain should be used in the calculation of gross farm income. They do not develop this argument because the net capital gain is large enough to make the critical difference in this case.

9. Moving the $20,107.00 capital gain to the farm income category yields gross farm income of $53,751.00. Gross farm income then exceeds the 50 percent total gross income figure of $46,776.00 by $6,975.00.

ize themselves not as farmers, but as a welder and an LPN on their 1996 and 1997 Iowa Tax Returns and on Bankruptcy Schedule I (Current Income of Individual Debtors). The Bank also points out that the Debtors would not have qualified for Chapter 12 relief in 1996 or 1997 because their gross farm income for 1995 and 1996 was not more than 50 percent of their total gross income for those tax years.[10]

## APPLICABLE LAW

11 U.S.C. § 109(f) identifies who may be a debtor under Chapter 12 by simply stating "[o]nly a family farmer with regular annual income may be a debtor under chapter 12 of this title."

11 U.S.C. § 101(19) broadly defines "family farmer with regular annual income" as meaning a "family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title."

11 U.S.C. § 101(18)(A) narrowly defines "family farmer," for cases in which the debtors are individuals, as meaning:

> ... individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of

a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed;[11]

...

11 U.S.C. § 101(21), in turn, defines "farming operation" to include "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."

▆▆▆ The debtor filing the Chapter 12 petition bears the ultimate burden of proving eligibility for relief under that chapter. *In re Tim Wargo & Sons, Inc.*, 869 F.2d 1128 (8th Cir.1989) (specifically citing *In re Rott*, 73 B.R. 366, 371 (Bankr.D.N.D. 1987)). In considering whether income an individual debtor receives from a particular source amounts to farm or non-farm income for the purpose of meeting the definitional requirement of section 101(18)(A), courts must "identify those farming activities engaged in or owned or operated by" the debtor and "determine whether that individual received more than fifty percent of his or her gross income in the relevant year from those activities." *In re Easton*, 883 F.2d 630, 633 (8th Cir.

10. According to the Debtors' 1995 and 1996 tax returns attached to the Bank's Motion, their 1995 gross farm income fell short by $1,170.00 ( [$45,980.00 gross farm income + $48,320.00 gross non-farm income = $94,-300.00] × 50% = $47,150.00.), and the Debtors' 1996 gross farm income fell short by $12,542.50 ( [$21,909.00 gross farm income + $46,994.00 gross non-farm income = $68,-903.00] × 50% = $34,451.50.)

11. By way of contrast, 11 U.S.C. section 101(20) defines "farmer" as meaning:
> ... (except when such term appears in the term "family farmer") person that received

> more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person;
> ...

11 U.S.C. § 101(20). The definition applies only where the term "farmer" appears in the Bankruptcy Code. *In re LaFond,* 791 F.2d 623 (8th Cir.1986) (holding 80 percent test did not apply in context of lien avoidance under 11 U.S.C. § 522(f)).

1989).[12] Assessing the true nature of the income rests neither "upon any risk of non-payment [the individual debtor] might have faced, nor upon the universe of particular circumstances surrounding [the individual debtor's] financial situation, but rather upon the extent to which the income in question bears the relation to [the individual debtor's] farming activities prescribed by the words of the statute." *Id.*

## DISCUSSION

The Debtors filed their petition for relief under Chapter 12 in 1998. In accordance with 11 U.S.C. § 101(18)(A), the applicable tax year is 1997. Given the specific focus of that statutory provision and the rejection of a totality of the circumstances approach by the Eighth Circuit Court of Appeals, consideration of income categories and amounts in tax years 1995 and 1996 appears to be irrelevant and immaterial.

The narrow issue before this Court is whether the 1997 net capital gain, realized from the sale of the 50–acre farm, was sufficiently related to the Debtors' farming activities to permit characterizing that net capital gain as farm income rather than as non-farm income. That the sale per se was not a risk-laden venture is of no consequence. Likewise, many of the tangential factors the Debtors and Bank have argued are not essential to the relationship test this Court must apply. Hence, that the Debtors were employed off the farm essentially "full-time" (in our traditional urban sense of the concept) and that the Debtors failed to identify themselves as farmers on their tax returns and on Bankruptcy Schedule I are of no moment to the

Bank's contention the Debtors' farm income is not more than 50 percent of their gross income.[13] Likewise, that the Debtors sold the 50–acre farm in 1997, at the Bank's behest, or did not sell certain livestock in 1997, upon the recommendation of their tax advisor, does nothing to bolster their position that they did receive more than 50 percent of their 1997 gross income from their farming operation.

With respect to Tax Schedule D net capital gains in general, the Bank urges the Court to ignore them.[14] The Debtors suggest such an approach is improper and could lead to the exclusion of any number of income categories.

The Court agrees with the Debtors. The plain language of the statute does not support an interpretation that capital gains may be excluded from consideration. Ignoring net capital gains would open the door of Chapter 12 relief to individuals who generate significant capital gains related to non-farming activities, thus undercutting Congress' purpose in defining "family farmer" and "farming operation" to ensure that Chapter 12 relief would not become a tool of those seeking tax shelters. *See In re Pratt,* 78 B.R. 277, 278 (Bankr.D.Mont.1987) (discussing some of the legislative history behind Chapter 12). Finally, ignoring net capital gains would run afoul of the *Easton* mandate to determine the relationship between the income in question and the farming activities.

With respect to a capital gain resulting from the sale of farm real estate, the Bank relies on the statement in *Easton* that "[l]and or an interest in land, without more, is plainly not a farming operation." *Easton,* 883 F.2d at 636. The Bank ad-

12. At the time the *Easton* decision was written, the definition of "family farmer" was found at 11 U.S.C. section 101(17) and "farming operation" was found at 11 U.S.C. § 101(20). Those sections were redesignated as sections 101(18) and (21), respectively, by Pub.L. No. 101–647 (Nov. 29, 1990).

13. Even under a broader inquiry, income tax declarations are not determinative of a debt-

or's status as a "family farmer" under Chapter 12. *See Matter of Burke,* 81 B.R. 971, 975 (Bankr.S.D.Iowa 1987) (citing *In re Wolline,* 74 B.R. 208, 210 (Bankr.E.D.Wis.1987)).

14. The Bank does not dispute that the sale of livestock, reportable on Tax Schedule F, and the sale of farm assets, like breeding stock reportable on Form 4797, would be subject to the *Easton* relationship test.

monishes the Court not to characterize the sale of all farm assets as farm income. The Bank then seemingly implies that the sale of farm real estate will always be a manipulation of the Bankruptcy Code if more than 50 percent of an individual debtor's remaining income is not attributable to the debtor's farming activities, meaning any resulting net capital gain should always be construed as non-farm income.

■ The Court agrees that a capital gain from the sale of a farm asset is not farm income per se. The Court, however, does not agree that a capital gain from the sale of farm real estate is non-farm income per se if the individual debtor, in the applicable tax year, did not realize more than 50 percent of the remaining income from farming activities. To do so would also ignore the *Easton* mandate that inquiry be made into the relationship between a given source of income and any identifiable farming activities.[15]

With respect to the relationship between the net capital gain resulting from the sale of the Debtors' 50–acre farm in early March of 1997 and the Debtor's farming activities, the Bank argues only the pasture ground portion of the farm has any bearing on the issue under consideration and emphasizes that ground has not generated much income in recent years. Citing *In re Smith*, 109 B.R. 241 (Bankr.W.D.Ky. 1989), the Bank also contends the net capital gain in issue is the equivalent of insurance proceeds received from the destruction of a combine by fire and, therefore, is not related to the Debtors' farming activities.

The Debtors argue the sale of their 50–acre farm was interwoven with their farming operation because the sale was done to enable them to continue farming. They emphasize the sale was not a step toward terminating their farming operation. They point out all the proceeds went to pay off one of their agricultural loans with the Bank. In sum, they maintain the activity of selling off their least desirable farmland was necessary to perpetuate the farming operation itself.

■ The Court again agrees with the Debtors. The real estate had been part of their farming operation for years. That the farm played a limited role in the production of farm income in recent years is not critical. (The sale occurred early in 1997; the Debtors used the farm's pasture ground in 1996.) The sale was a conscious action taken to downsize the farming operation, not to liquidate it. All the sale proceeds, minus sale costs, serviced the debt of the farming operation. Just as any income, minimal or not, generated from the sale of livestock that grazed on the 50–acre farm would have been considered farm income in 1996, the net capital gain realized from the sale of the 50–acre farm to keep the farm operation going must be considered farm income in 1997. *See In re Van Fossan*, 82 B.R. 77, 81 (Bankr. W.D.Ark.1987) (proceeds from sale of real property, not used for farming purposes, did not constitute farm income).[16] *But see In re Sohrakoff*, 85 B.R. 848, 849 (Bankr. E.D.Cal.1988) (proceeds from sale of farmland did not constitute farm income).[17]

## CONCLUSION

WHEREFORE, the Court finds that

(1) The net capital gain from the sale of the Debtors' 50–acre farm was related to their farming activities; and therefore

---

15. Were courts to accept the type of argument the Bank is making here, some otherwise eligible family farmers might not be willing to sell off property to service debt at their lenders request without first seeking protection under Chapter 12. (The Debtors in this case certainly did not need to sell the land to pay off a portion of the amount owed the Bank in order to meet the debt limitations of 11 U.S.C. § 101(18)(A).)

16. This pre *Easton* case seemingly anticipated the relationship test.

17. This pre *Easton* case from another circuit did not consider a relationship test.

(2) The net capital gain is farm income for the purpose of 11 U.S.C. § 101(18)(A); and therefore

(3) More than 50 percent of the Debtors' 1997 gross income was related to their farming operation; and therefore

(4) The Debtors have established they are eligible for relief under Chapter 12; and therefore

(5) The Bank's Motion to Dismiss must be denied.

A separate Order denying the Motion to Dismiss shall be entered accordingly.