**In re Thomas MAYNARD, Debtor.**

**No. 01–38056 (CGM).**

United States Bankruptcy Court,
S.D. New York.

July 21, 2003.

Jeffrey L. Sapir, White Plains, NY, Chapter 12 Trustee.

Andrea B. Malin, Thomas Genova, Genova & Malin, Wappingers Falls, NY, for Debtor.

### MEMORANDUM AND DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 12 PLAN

CECELIA MORRIS, Bankruptcy Judge.

### PROCEDURAL HISTORY

On December 21, 2001, Thomas Maynard ("Maynard") filed a petition for Chapter 12 relief under Title 11 of the United States Code (hereinafter "Bankruptcy Code" or "Code"). On January 24, 2003, Maynard filed an Amended Plan. On January 26, 2003, Jeffrey L. Sapir ("Sapir"), the Chapter 12 trustee, filed an Objection to Confirmation of the Amended Plan raising a number of claims. On February 7, 2003, Maynard filed his opposition to Sapir's Objection. On March 3, 2003, Sapir filed his continued Opposition to Maynard's plan confirmation on numerous grounds, including the new claim that the debtor was not a "family farmer" as defined in § 101(18) of the Code. On March 27, 2003, Maynard filed his opposition to Sapir's continued Opposition and affirmed that he qualified as a "family farmer." On April 8, 2003, this Court held a confirmation hearing at which the parties reported that Maynard had resolved all of Sapir's objections to confirming the plan, except the threshold question of whether Maynard qualifies as a "family farmer" for Chapter 12 relief. The Court asked the parties to submit supplemental briefs on the issue. Sapir filed his supplemental Memorandum of Law on May 6, 2003; Maynard filed his on May 20, 2003. This Court held an evidentiary hearing ("the evidentiary hearing") on June 10, 2003 to receive Maynard's oral testimony.

### BACKGROUND

Maynard testified that he has been employed in the fruit and crop farming profession for approximately 24 years. He owns and personally farms 104 acres of land located at 326 River Road, Ulster Park, New York since purchasing it in 1992. He plants, harvests, markets and sells the crops he produces. He testified that for tax reasons, he created a separate legal entity, Maynard Farms, Inc. ("MFI"), a Subchapter S corporation as defined in 26 U.S.C. § 1361, and of which he was the sole owner. MFI paid Maynard $2,500 per month rent for use of the farm, which Maynard used to make his mortgage payments. However, once Maynard filed for bankruptcy on December 21, 2001, he ceased operations as MFI and continues to operate the farm by himself as a sole proprietor.

Maynard's 2000 and 2001 1040 tax returns list his gross annual income as $30,000 from rents received. Those rents received were from MFI. At the evidentiary hearing, Maynard testified that he had no other source of income other than the rents he received from MFI. Maynard did not include a Schedule C attachment with either his 2000 or 2001 tax return.

At the evidentiary hearing, Maynard also testified that he did not receive rents from MFI prior to the start of the growing season. In the event that MFI failed to produce enough crops and could not necessarily satisfy the $30,000 yearly rent, Maynard testified that he would "have to come up with it" himself.

Sapir concedes that had Maynard filed for bankruptcy today, when operating as a sole proprietor, Maynard would undoubtedly qualify as a "family farmer" as

defined within 11 U.S.C. § 101(18). However, since Maynard's farm was then operated by MFI, and Maynard's only source of income in 2000 was rent received from MFI, Sapir argues that Maynard is not a "family farmer."

### DISCUSSION

To qualify as a "family farmer" under 11 U.S.C. § 101(18), an individual farmer must both be "engaged in a farming operation" and fulfill a "farm income" test in which at least fifty percent of the individual's gross income during the taxable year immediately preceding that in which the petition was filed must have been received from the individual's farming income.[1]

Turning to the first element of 11 U.S.C. § 101(18)'s "family farmer" test, Maynard testified that he was personally responsible for all aspects of MFI's crop cultivation and production. Sapir does not dispute these facts. Such activities qualify as "farming operation" as defined in 11 U.S.C. § 101(21). Sapir does not dispute this legal conclusion.

Determining whether the second element of the Code's definition of "family farmer" is satisfied proves more complex. Here, Sapir argues that Maynard is not a "family farmer" on the grounds that MFI—and not Maynard—was engaged in the farming. This second element involves calculating "farm income" for purposes of determining "family farmer" eligibility. No court in the Second Circuit has addressed the question of whether rental income qualifies as "farm income" to satisfy the definition of 11 U.S.C. § 101(18), and accordingly, this Court is not bound by any mandatory authority. Other courts that have confronted this issue have developed three differing tests to answer this

question. A brief discussion of the tests now follows.

### A. The Armstrong Test

Some courts have held that rental income is "farm income" only where the debtor's receipt of rental income is subject to traditional farming risks. *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987). In *Armstrong*, the court held that rent paid to the debtor at the beginning of a lease and as cash payment was not "farm income" for purposes of protecting the debtor from an involuntary Chapter 11 proceeding. *Id.* at 1027. The court reasoned that the debtor's receipt of rent "was insulated from the traditional risks of farming." *Id.* at 1028. Notably, the court restricted this type of risk analysis approach to " 'payment up front' arrangements." *Id.* at n. 2.

Some courts in the Eighth Circuit have adopted *Armstrong's* "farm income" test. *In re Krueger*, 104 B.R. 223 (Bankr.Neb. 1988) (rent based on percentage of proceeds from sale of crops is "farm income"). Other courts expanded upon *Armstrong's* reasoning. *See In re Easton*, 883 F.2d 630 (8th Cir.1989) (a debtor's receipt of cash rent from neighbor is not "farm income" unless the debtor played a significant operational role or had an ownership interest in the crop production on rented acreage); *In re Maschhoff*, 89 B.R. 768, 770 (Bankr. S.D.Ill.1988) ("tenants' limited participation in debtors' farming operation does not serve to convert the landlord-tenant relationship into a farming activity, as nothing about the tenants' assistance makes the monthly rental payments more or less certain").

---

1. "The preceding year" is used even if the case was filed late in a calendar year. *In re Fogle*, 87 B.R. 493 (Bankr.N.D.Ohio 1988).

Here, Maynard filed for bankruptcy on December 21, 2001, so this Court must look at his year 2000–finances.

### B. The "Totality of Circumstances" Test

Some courts analyze rent as "farm income" on a case-by-case basis and in light of all relevant circumstances. *Matter of Burke*, 81 B.R. 971 (Bankr.S.D.Iowa.1987). This "totality of circumstances" approach was first promulgated in Circuit Judge Cudahy's dissent in *Armstrong*, in which he urged that court to consider the following questions when determining whether rental payments constitute "farm income:" 1) is rental of the land an integral part of the debtor's farming operation?; 2) was the debtor forced to temporarily rent the land?; 3) what are the prior and proposed uses of the rented land?; and 4) does the debtor show a firm purpose to farm the land again in the near future? *Armstrong*, 812 F.2d at 1031.

In *Burke*, the debtors had been farming in the area for over twenty-five years and leased their farm to a corporation in which they were neither principals nor shareholders. *Burke*, 81 B.R. at 972. "The debtors leased the farm to the corporation ... on a 60/40 cropshare basis." The *Burke* Court held that, "[t]o disqualify this family farm because the income received from leasing the land was not received from a 'risk laden' farming enterprise and therefore not derived from a farming operation would seemingly fly in the face of congressional intent." *Id.* at 976. "Likewise, the focus must be on the 'continuation' of farming endeavors and not on reviving abandoned operations." *Id.* The *Burke* Court applied the *Armstrong* dissent's "totality of circumstances" approach to hold that the rent debtors received from leased land was "farm income" for purposes of determining "family farmer" exemption under Chapter 12. *Id.*

This decision addressed both crop-share and cash rent arrangements. *Id.* In its examination of the cash rent arrangement, the court suggested consideration of the following factors: 1) duration of past farming activities; 2) duration and reason for cessation of farming activities; 3) extent of the cessation of farming activities; and 4) the relationship of the debtor landlord to the tenant. *Id.* at 976–77.

### C. The Hybrid Test

A third approach for determining whether rent constitutes "farm income" evolved where courts merged the *Armstrong* and "totality of circumstances" tests. This hybrid test incorporates factors from each of its predecessors. The court in *In re Creviston*, 157 B.R. 380, 384 (Bankr.S.D.Ohio. 1993), utilized this approach to find that rent is "farm income" for purposes of Chapter 12 exemption when the debtor rented his land to a corporation for which he worked, while maintaining "his labor, ownership and decisional responsibilities." *Id.* at 385. The *Creviston* Court considered:

1. The extent to which the debtor was involved in the operations which produced the farming income; 2. the historical source of the debtor's income; 3. whether the income challenged as "non-farm" related is an isolated departure from the norm ...; 4. the degree of "farming" risk attributable to the debtor from the activity questioned ...; 5. the degree to which income producing farm assets are owned by unrelated third parties; and 6. the characterization or treatment of the challenged income on an income tax return.

*Id.* at 384–85.

This Court need not choose one test over another, as all three tests are satisfied by the circumstances of the present case.

The rent MFI paid Maynard depended on the amount of crops MFI sold. The amount of crops MFI sold depended on

the success of the farming operation. Had either the 2000 or 2001 growing seasons been plagued with crop failure, bad weather or other traditional agricultural risks, MFI might have been unable to afford its $2500 monthly rent. Under such circumstances, Maynard testified that he would have personally paid the farm mortgage. Accordingly, satisfying the *Armstrong* test, Maynards's receipt of rent from MFI was clearly subject to "traditional risks of farming."

This conclusion is further supported by the holdings of *Krueger* and *Easton*. Maynard's receipt of rent from MFI parallels the debtor's collection of rent in *Krueger*, where rent payments hinged on the amount of crops produced on the rented land. While MFI's payment of rent to Maynard was not explicitly dependant on crop yield as in *Krueger*, this payment was implicitly dependant on the success of the MFI farming operation. *Krueger*, 104 B.R. at 225. Therefore, Maynard's receipt of rent was subject to the same "traditional agricultural risks" as the debtor in *Krueger*. *Id*. Also, the present case satisfies the *Easton* Court's requirement that a "family farmer" must have "had some significant degree of engagement in, played some significant operational role in or had an ownership interest in the crop production which took place" on the rented land. *Easton*, 883 F.2d at 636. At the evidentiary hearing, Maynard testified that he personally oversaw all aspects of crop production on that land and that he was the sole owner of the land rented to MFI.

Maynard is similarly a "family farmer" under the "totality of circumstances" test. Here, the test's requirement that the debtor show a "firm purpose" to farm the land in the near future is satisfied by Maynard's testimony that he has continued to personally farm the land since filing his Chapter 12 petition, after which MFI ceased to operate. The chronology of events also satisfies the test's consideration of the prior uses of the rented land. Maynard has continuously and personally farmed the land in question from 1992 to present. He personally farmed the land while renting it to MFI.

Finally, the circumstances of the present case also satisfy the hybrid test, as set forth in *Creviston*. Maynard meets the first element, that the debtor "was involved in the operations which produced the farming income," because he alone cultivated the crops for MFI. *Creviston*, 157 B.R. at 384. Furthermore, Maynard's testimony that he has worked in the farming industry for more than twenty years meets the second element, an examination of the historical source of the debtor's income. *Id*. Maynard was exposed to "traditional farming risks," as required in the fourth element, and there were no income-producing farm assets owned by unrelated third-parties, as analyzed under the fifth element. In total, the circumstances support a finding that MFI's rents constitute "farm income" as established in *Creviston*.

## CONCLUSION

For the reasons stated above, this Court finds Maynard a "family farmer" as defined in 11 U.S.C. § 101(18) and denies Sapir's Objection to Confirmation of Maynard's Amended Chapter 12 plan.

SO ORDERED.